**Kimberly Weaver WILLIAMS, Plaintiff,**

v.

**DELCOLLO ELECTRIC, INC., Defendant.**

Superior Court of Delaware, New Castle County.

Submitted: June 8, 1989.
Decided: June 15, 1989.

L. Vincent Ramunno, Ramunno & Ramunno, P.A., Wilmington, for plaintiff.

B. Wilson Redfearn, Tybout, Redfearn & Pell, Wilmington, for defendant.

## OPINION

BARRON, Judge.

The defendant, Delcollo Electric, Inc., (Delcollo) has moved to vacate the default judgment entered against it on April 13, 1989, contending that its failure to answer the complaint in a timely manner was the result of excusable neglect. The facts giving rise to the motion are as follows:

### THE FACTS [1]

On April 15, 1987, Kimberly Weaver Williams (plaintiff), an employee of Greytak Chevrolet, was allegedly struck by a piece of pipe which was dropped by an employee of Delcollo while working over the garage area of Greytak Chevrolet. Two days later, Charles J. Kennedy, Esquire, sent a letter to Delcollo indicating that he represented the plaintiff and was

---

1. Other facts not set forth within this section will be addressed as deemed pertinent and necessary.

pursuing a claim against Delcollo for negligence. Delcollo forwarded this letter to the Delaware office of Harleysville Mutual Insurance Company (Harleysville), Delcollo's insurer, and a file was opened regarding the claim. The file was assigned to George L. Gwynn (Gwynn), a Harleysville staff adjuster.

On September 30, 1988, Harleysville's Delaware office was closed, and the file was transferred to Harleysville's Chesapeake, Maryland office. On January 13, 1989, Gwynn retired as a Harleysville employee.

In January, 1989, L. Vincent Ramunno, Esquire, was retained by the plaintiff. On January 17, 1989, Mr. Ramunno, on behalf of his client, wrote to Gwynn, indicating that he was preparing to file suit since the statute of limitations was approaching. (Gwynn had retired four days earlier.) On January 24, 1989, plaintiff filed this negligence action against Delcollo.

On February 2, 1989, Dan Delcollo, President of Delcollo, was personally served with a copy of the complaint. Mr. Delcollo forwarded a copy of the summons and complaint to Harleysville. On February 9, 1989, Harold S. Link, Jr. (Link), Harleysville's negotiator assigned to the case, forwarded a copy of the summons and complaint, via certified mail return receipt requested, to the law firm of Tybout, Redfearn, Casarino & Pell, requesting that B. Wilson Redfearn, Esquire, enter his appearance on behalf of Delcollo. The letter with enclosure, however, never arrived at the aforementioned law offices because the address had been incorrectly stated.[2]

On February 23, 1989, Mr. Ramunno wrote to Gywnn, advising him that Harleysville's insured, Delcollo, had been served on February 2, 1989, and that the answer was overdue. Mr. Ramunno further advised Gwynn that if an answer was not received within 10 days from February

23rd, a motion for default judgment would be filed. Mr. Ramunno's letter of February 23, 1989, was apparently filed without being reviewed.

On March 22, 1989, plaintiff filed with this Court a Notice of Motion for Default Judgment. On April 13, 1989, the Court granted plaintiff's Motion and entered a default judgment against Delcollo. Further, the Court ordered that an inquisition hearing be scheduled to determine the amount of damages. On April 21, 1989, the inquisition hearing was held, and the Court entered an Order awarding $75,000 in damages to the plaintiff, plus costs. Neither Delcollo nor Harleysville (and Harleysville's counsel) was ever aware of either the hearing on plaintiff's Motion for Default Judgment or the inquisition hearing until after both had transpired.

On May 26, 1989, Delcollo filed with the Court a Motion to Set Aside Default Judgment pursuant to Super.Ct.Civ.R. 60(b).

## THE LAW

The applicable standards which the Court should follow in ruling upon a defendant's motion to vacate a default judgment are succinctly stated in the case of *Battaglia v. Wilmington Savings Fund Society*, Del. Supr., 379 A.2d 1132 (1977), as follows:

"A motion to open a default judgment pursuant to Rule 60(b)(1)[3] ... is addressed to the sound discretion of the Trial Court. *Model Finance Company v. Barton*, Del.Super., 188 A.2d 233 (1963); 7 Moore's *Federal Practice* (2d ed.) ¶ 60.19. In determining whether there was an abuse of discretion, we consider two questions. *First, did the defaulting party make some showing that, if relief is granted, the outcome of the action may be different from what it will be if the default judgment is permitted to stand?* Wright & Miller,

---

2. The letter was addressed to the law firm at "P.O. Box 92". The actual Post Office Box number is 2092.

3. Superior Court Civil Rule 60(b) provides in pertinent part:

*"Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.* On motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect ..."

*Federal Practice and Procedure:* Civil § 2697. This test has been expressed as a requirement that the defaulting party demonstrate a meritorious defense to the underlying action. *Id.* at § 2697; *Medunic v. Lederer,* 3 Cir., 533 F.2d 891, 893 (1976). *Second, will substantial prejudice be caused the non-defaulting party by granting the motion?* Wright & Miller, supra, at § 2699; *Medunic v. Lederer,* supra. And when reviewing an order granting a motion to open a default judgment, we recognize that *Rule 60(b) has been accorded a liberal construction because of the underlying policy which favors a trial on the merits to a judgment based on a default. Robins v. Garvine,* Del.Supr., 37 Del.Ch. 44, 136 A.2d 549, 552 (1975); *Medunic v. Lederer,* supra." (Emphasis added.)

We see from the above that the starting premise is that Super.Ct.Civ.R. 60(b) should be liberally construed because of the underlying policy which favors a trial on the merits as opposed to a judgment based on a default. With the liberal construction to be given Rule 60(b) in mind, we then must ask the following two questions:

1. Did the defaulting party make some showing that, if relief is granted the outcome of the action *may* be different from what it will be if the default judgment is permitted to stand?

2. Will substantial prejudice be caused the nondefaulting party if the motion is granted?

If the answer to the first question is affirmative and if the answer to the second question is negative, the motion should be readily granted.

The primary reason offered in support of vacating a default judgment is that the defaulting party was guilty only of excusable neglect and not of wilful neglect.[4] Excusable neglect has been defined as that neglect which might have been the act of a reasonably prudent person under the circumstances. *Cohen v. Brandywine Raceway Association,* Del.Super., 238 A.2d 320,

325 (1968). Thus, in *Battaglia v. Wilmington Savings Fund Society, supra,* the Court inferred that it was not excusable neglect where the defendant's attorney inadvertently and by mistake mixed the complaint served upon him with other unrelated papers, as a result of which existence of the complaint had completely "slipped" his mind. Was the conduct of the defendant's attorney the conduct of a reasonably prudent person? The Court felt not.

As was stated in the case of *Keith v. Melvin L. Joseph Constr. Co.,* Del.Super., 451 A.2d 842 (1982):

> In exercising its discretion under Super.Ct.Civ.R. 60(b)(1) the Court, with deference to the policy favoring disposition of cases on their merits, generally favors such motions upon almost any reasonable excuse. *Vechery v. McCabe,* Del. Super., 100 A.2d 460 (1953). However, the Court must examine the considerations of each case ... in order to determine whether the conduct of the moving party was the conduct of a reasonably prudent person.... Only where the conduct can be so characterized, and the moving party also established (1) the possibility of a meritorious defense, and (2) no substantial prejudice to the non-moving party, will the Court grant the motion to vacate pursuant to Rule 60(b)(1)....

In *Keith, supra,* this Court held that the conduct of the defendant who simply ignored the process was not that of a reasonably prudent person. It therefore denied the motion to vacate.

In the case before the Court, the determination is not that clear. I believe, however, that the Court should be guided by the following precept: Any doubt should be resolved in favor of the moving party because of the sound public policy favoring determination of actions on the merits. At the same time, I am mindful that when negligence is so gross as to amount to

---

**4.** A finding of excusable neglect should be made prior to addressing the meritorious claim and prejudice issues.

sheer indifference, to open and vacate judgments upon such excuse would cease to give meaning to the words "excusable neglect". *Vechery v. McCabe, supra.*

## APPLICATION OF THE LAW TO THE FACTS OF THIS CASE

### A. Excusable Neglect

It is undisputed that the defendant, Delcollo, acted throughout the course of these proceedings in a most reasonable manner. On April 17, 1987, plaintiff's counsel wrote to Delcollo indicating that he represented the plaintiff and was pursuing a claim against Delcollo for negligence. Delcollo immediately forwarded this letter to its insurer, Harleysville. On February 2, 1989, Delcollo's president was personally served with the complaint. Again, Delcollo immediately forwarded a copy thereof to its insurer.

Delcollo's conduct was that of a reasonably prudent person. Having been served with the summons and complaint, Delcollo prudently and immediately turned the documents over to its insurance carrier. Delcollo had every reason to believe that the matter would be handled by its insurer.

■ Here, the neglect was occasioned not by Delcollo but rather by its insurer, Harleysville. Generally, where a defendant's default is due solely to the neglect of the defendant's insurer, that neglect will not be attributed to the defendant, and the default will be vacated on motion. 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 55.10[2], at 55–66 (1988). Thus, in the case of *West v. Wood*, Del.Super., C.A. No. 40, 1961, Carey, Judge (May 25, 1961) (Letter op. at 1) Judge Carey found that "the defendant himself acted promptly in reporting the matter to his insurance carrier and the mistake occurred in the office of the latter". Judge Carey concluded that "[t]he neglect is one which is understandable and which could occur in any office employing several individuals".

■ Here, the neglect is partially explained by the following factors: First, approximately five months after Harleysville had opened a file on the case, it closed its Delaware office and transferred its files to its Chesapeake, Maryland office. Second, Gwynn, the adjustor who had been assigned to the case back in April, 1987, retired as a Harleysville employee on January 13, 1989, eleven days before plaintiff filed suit. Third, Link, a Harleysville negotiator assigned to the case after Gwynn's departure, forwarded a copy of the complaint to the law firm of Tybout, Redfearn, Casarino & Pell immediately after receipt of same. It was only due to the fortuitous and clearly inadvertent typographical error in the address that the materials never arrived at their intended destination. Fourth, it must be remembered that Mr. Ramunno's letter of February 23, 1989, was addressed to Gwynn who had retired more than a month before. This explains and somewhat excuses the fact that this letter was never reviewed. Fifth, the default was taken within a short time after the expiration of the twenty day answering period, and defendant acted quickly in moving to vacate the default after defendant had become aware of same. This is not a case where defendant waited months before taking corrective action. *See Keith v. Melvin L. Joseph Constr. Co., supra; Lawson v. Lambert*, Del.Super., C.A. No. 86C–JA–23, Chandler, Judge, 1988 WL 97897 (September 21, 1988) (Letter op. at 3–4). Finally, there is reason to believe that Mr. Ramunno knew that Mr. Redfearn represented Harleysville. Yet, Mr. Ramunno never contacted Mr. Redfearn about the pendency of this action.

I conclude that the insurer's neglect did not reach to the level of sheer indifference. I further conclude that said neglect was excusable within the meaning of Super.Ct. Civ.R. 60(b).

### B. Meritorious Claim

Having found excusable neglect, the Court now addresses the issue of whether the defaulting party made some showing that, if relief is granted, the outcome of the action *may* be different from what it will be if the default judgment is allowed to stand.

■ The showing need not be definitive. A possibility of a different result will suffice. Such a possibility is shown through Link's May 26, 1989 affidavit filed with defendant's motion, the pertinent portions of which read as follows:

"(b) On June 5, 1987, George Gwynn placed a memo into the file stating that he obtained a recorded statement from James Street, the contractor employed by Delcollo. According to the memo, Mr. Street stated that a piece of PVC pipe, which had been leaning against the wall, slid over and struck the plaintiff in the shoulder area. Mr. Street described the PVC pipe as ¾" EMP hollow conduit, about 10 feet long, and weighing less than five pounds. The memo further reflects that the general contractor employed to work at Greytak Chevrolet, Peter DeMasi, characterized the plaintiff's claim as 'a scam' because the plaintiff said that she 'would get a new corvette out of the incident.';

(c) On June 29, 1988, Dr. Joseph Barsky wrote to George Gwynn setting forth the results of his examination. Dr. Barsky said that the electroencephalogram, CAT brain scan, skull x-ray and the x-rays of the cervical and dorsal spine were all within normal limits. He concluded that, based on all of the data: [i] there was no evidence of any organic problem to account for the plaintiff's complaints involving the cervical and shoulder area; and [ii] there was no relationship, either directly or indirectly, between plaintiff's complaints and the April 15, 1987 accident."

The above recitation succinctly sets forth substantial questions on the issues of causation and damages and clearly meets, in the Court's view, the meritorious claim prong of the standards set forth in *Battaglia v. Wilmington Savings Fund Society*, *supra*, for ruling upon a motion to vacate a default judgment.

### C. Substantial Prejudice

Plaintiff contends that she will suffer substantial prejudice should the Court grant defendant's motion. Plaintiff bases this contention on the fact that there is cause to believe that the individual who dropped the pipe was an independent contractor. Plaintiff maintains that she sued the defendant on January 24, 1989 in time to ascertain, through discovery, the name of this individual and to then add him as a party defendant before the running of the statute of limitations which occurred on April 15, 1989, two years after the accident. Ten *Del.C.*, § 8119. Plaintiff contends that what she feared and tried to avoid will occur if the Court allows the vacation of the default judgment. In such a case, it would be too late to sue the individual who dropped the pipe and this will substantially prejudice her and could even extinguish her cause of action should he have, in fact, been an independent contractor.

The Court accepts the plaintiff's assertions of potential substantial prejudice. This does not end the matter, however. Super.Ct.Civ.R. 60(b) provides that relief from a default judgment may be granted "upon such terms that are just". *See Pitts, et al. v. White*, Del.Super., 103 A.2d 245 (1954). The imposition of conditions as part of granting a motion to vacate may be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and subsequent reopening of the case. *See Hritz v. Woma Corp.*, 732 F.2d 1178 (3rd Cir.1984); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653 (3rd Cir.1982). This Court has employed such conditions in orders to vacate default judgments. *See e.g., West v. Wood, supra; Hirschman v. Homeopathic Hospital of Delaware*, Del. Super., C.A. No. 1684, 1960, Christie, Judge (April 7, 1961) (Slip op.). Thus, in addition to its general discretion to vacate a default judgment, the Court has further discretion to impose such conditions as it deems appropriate, with the moving party then given the option either of complying with the conditions or allowing the judgment to stand. 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2857, at 162 (1973). This is in keeping with the view that proceedings held on motions to set aside default judgments are "essentially equitable in nature, ruled by equitable principles, and the appeal is to the con-

science of the Court". *Kaiser–Frazer Corp. v. Eaton*, Del.Super., 101 A.2d 345 (1953).

Based upon the foregoing, I conclude that conditions may be imposed in connection with this case which will erase the potential substantial prejudice which plaintiff alleges.

## CONCLUSION

Recognizing that default judgments are viewed with disfavor, *Keystone Fuel Oil Co. v. Del–Way Petroleum, Inc.*, Del.Super., 364 A.2d 826 (1976), and that Super. Ct.Civ.R. 60(b) is to be liberally construed, *Robins v. Garvine*, Del.Supr., 136 A.2d 549 (1957), and upon a balancing of the equities, the Court concludes that reasonable grounds exist for setting aside the default judgment. However, the motion will be granted only if defendant is willing to accept the same conditions imposed by Judge (now Chief Justice) Christie in the *Hirschman* case,[5] *supra*, and the following condition as well:

1. Delcollo and its insurer waive any possible defense based upon the law of agency and they further stipulate and acknowledge responsibility for *all* contractors on the job site on the date, time and location in question.

If defendant is willing to accept the conditions as stated above, it may prepare within ten days of the receipt of this opinion an appropriate stipulation and an order vacating the default judgment and granting leave to file an Answer to the Complaint.

It Is So ORDERED.

---

**5.** The conditions imposed in the *Hirschman* case were as follows:

1. If a judgment is ultimately rendered in plaintiff's favor, interest will run from the date the default judgment was entered;

2. The court costs of all proceedings reasonably connected with the entry and the reopening of the judgment will be borne by defendant no matter what the outcome of the litigation; and

3. Defendant will promptly complete discovery and prepare for trial and will not seek a postponement of the trial unless extraordinary grounds for such postponement arise, which grounds are beyond defendant's control.