# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RONALD L. LANGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N19C-09-060 JRJ |
| | ) | |
| EXTERIOR PRO SOLUTIONS, | ) | |
| INC. d/b/a DRY TECH | ) | |
| WATERPROOFING SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  December 31, 2019
Date Decided:    April 22, 2020

*Upon Defendant Exterior Pro Solutions, Inc. d/b/a Dry Tech Waterproofing Solutions's Motion for Relief from Judgment*: **DENIED**.

Thomas E. Hanson, Jr., Esquire, Barnes & Thornburg LLP, 1000 N. West Street, Suite 1500, Wilmington, Delaware 19801,  Attorney for Plaintiff.

Victoria K. Petrone, Esquire and Brian V. DeMott, Esquire, Baird Mandalas Brockstedt LLC, 2711 Centerville Road, Suite 401, Wilmington, Delaware 19808, Attorneys for Defendant.

**Jurden, P.J.**

## I. INTRODUCTION

Plaintiff Ronald Langston filed suit against Defendant Exterior Pro Solutions, Inc. d/b/a Dry Tech Waterproofing Solutions ("Dry Tech") alleging fraud, breach of express warranties, negligent misrepresentation, and professional malpractice in connection with waterproofing installation services Dry Tech performed at Langston's home. When Dry Tech failed to respond to Langston's Complaint, Langston obtained a default judgment pursuant to Superior Court Civil Rule 55(b)(1). Dry Tech has now filed a Motion for Relief from Judgment ("Motion") pursuant to Superior Court Civil Rules 55 and 60(b).[1] For the reasons explained below, Dry Tech's Motion is **DENIED.**

## II. BACKGROUND

On May 1, 2018, Langston contracted with Dry Tech for Dry Tech's waterproofing installation services to resolve basement flooding in Langston's home.[2] According to Langston, after Dry Tech performed its services, the flooding issues were not cured, and Langston was required to hire a second waterproofing company to address the flooding issues and repair the damage caused by Dry Tech in its failed attempt to resolve the flooding.[3]

---

[1] Defendant's Motion for Relief from Judgment ("Def. Mot."), (Trans. ID. 64454441).
[2] Compl., Ex. A (Trans. ID. 64175293).
[3] *Id.* ¶ 20.

Langston's Attempts to Resolve the Dispute

In November 2018, Langston initially tried to engage Dry Tech through the Consumer Protection Unit of the Delaware Department of Justice in an effort to resolve his claims.[4] After his efforts proved unsuccessful, he retained legal counsel.[5]

On May 13, 2019, Langston's counsel sent a detailed letter (the "Demand Letter") to Dry Tech's representative, Matthew Kropp, demanding that Dry Tech reimburse Langston for: (1) the initial payment of $14,100.00 he made to Dry Tech; and (2) the payment of $6,709.03 he made to the second waterproofing company for the repairs necessitated from Dry Tech's unnecessary replacement of the sump pump and French drain.[6] In the Demand Letter, Langston's counsel expressly stated, "[i]f payment [was] not made within thirty (30) days from receipt of this correspondence, Mr. Langston [would] have no choice but to file suit and pursue all available legal remedies against Dry Tech."[7]

On June 4, 2019, after three weeks of silence from Dry Tech, Langston's counsel sent a follow-up email to Kropp.[8] Again, Dry Tech did not respond.[9] On

---

[4] Plaintiff's Response in Opposition to Defendant's Motion for Relief from Judgment ("Pl. Resp.") ¶ 3 (Trans. ID. 64492346).

[5] *Id.* ¶ 4.

[6] Pl. Resp. ¶ 4, Ex. 1 (the "Demand Letter"); *see* Affidavit of Matthew Kropp ("Kropp Aff."), (Trans. ID. 64568056). Dry Tech has multiple offices in Pennsylvania. Langston's counsel emailed the Demand Letter to Kropp and mailed a copy to Dry Tech's office in Phoenixville, Pennsylvania.

[7] Demand Letter.

[8] Pl. Resp. ¶ 4.

[9] *Id.*

3

June 26, 2019, Langston's counsel sent a letter to Kropp and Dry Tech's President, Steve Lombardi.[10] In that letter, Langston's counsel advised he was resending the Demand Letter to Dry Tech because he had not received a response from Dry Tech and the return receipt was returned unsigned.[11] Langston's counsel expressly stated that if he did not receive a response from Dry Tech within ten days, Langston would proceed with filing suit.[12] Dry Tech did not respond to this letter either.[13]

Langston Files Suit Against Dry Tech

After receiving no response to his multiple communications, Langston gave up his attempts to reach a settlement with Dry Tech and filed suit on September 6, 2019.[14] Dry Tech was served with the Complaint in accordance with 10 *Del. C.* § 3104(f) on September 16, 2019, and its response was due by October 7, 2019.[15] When Dry Tech failed to respond by the deadline, Langston directed the Prothonotary to enter default judgment on November 5, 2019.[16]

---

[10] Pl. Resp., Ex. 2; Compl. ¶ 5. Paragraph 5 of Plaintiff's Response incorrectly states that the letter is dated July 26, 2019, not June 26, 2019. However, Exhibit 2 of Plaintiff's Response indicates that the referenced letter is dated June 26, 2019, and Langston's counsel mailed the June 26, 2019 letter with a copy of the Demand Letter to Dry Tech's offices in Norristown and Schwenksville, Pennsylvania.

[11] Pl. Resp., Ex. 2.

[12] *Id.*

[13] Pl. Resp. ¶ 5.

[14] *See* Compl.

[15] *See* Super. Ct. Civ. R. 12(a) ("A defendant shall serve an answer within 20 days after service of process, complaint and affidavit . . . ."). Neither party disputes that service of process of the Complaint upon Dry Tech was proper and timely.

[16] *See* Direction to Enter Default Judgment (Trans. ID. 64388490); Super. Ct. Civ. R. 55(b)(1).

On November 21, 2019, the law firm of Baird Mandalas Brockstedt, LLC ("Delaware Counsel") entered its appearance on behalf of Dry Tech[17] and filed the instant Motion. Dry Tech asserts there was a "miscommunication" between Dry Tech, its Pennsylvania counsel, and Delaware Counsel, and that its failure to timely respond to the Complaint was the product of excusable neglect.[18] Dry Tech further asserts it has meritorious defenses to Langston's claims[19] and Langston will not suffer substantial prejudice if the Court vacates the judgment.[20]

At the hearing on the Motion, the Court asked Delaware Counsel to explain why the alleged miscommunication justified Dry Tech's failure to respond to the Complaint. Delaware Counsel explained that a Pennsylvania attorney ("Pennsylvania Counsel") contacted him, and asked if he would represent Dry Tech in this lawsuit.[21] Based on this conversation, Delaware Counsel understood that Pennsylvania Counsel would confer with Dry Tech and instruct Dry Tech to contact Delaware Counsel. When weeks passed with no word from Pennsylvania Counsel or Dry Tech, Delaware Counsel contacted Dry Tech in early November 2019 inquiring whether Dry Tech still needed Delaware Counsel's representation in this

---

[17] Entry of Appearance (Trans. ID. 64388490).
[18] Def. Mot. ¶ 6.
[19] *Id.* ¶¶ 7– 14.
[20] *Id.* ¶ 15.
[21] At the hearing, Delaware Counsel did not say when this contact occurred. According to the Kropp Affidavit submitted after the hearing, this contact occurred on October 14, 2019. Kropp Aff. ¶ 6.

matter. Dry Tech, under the impression that Pennsylvania Counsel had already retained Delaware Counsel to represent Dry Tech, immediately retained Delaware Counsel, and Delaware Counsel entered its appearance and filed this Motion.

At the conclusion of the hearing on this Motion, the Court instructed Dry Tech to supplement the record with an affidavit from a person more knowledgeable about the events set forth in the Motion.[22] In response, on December 31, 2019, Dry Tech submitted the affidavit of Matthew Kropp (the "Kropp Affidavit").

The Kropp Affidavit

According to the Kropp Affidavit, "[i]n early October of 2019," Dry Tech contacted Pennsylvania Counsel, who had represented Dry Tech in Pennsylvania legal matters in the past, and provided him with a copy of the Complaint.[23] Pennsylvania Counsel told Dry Tech he needed to locate a Delaware-barred attorney to represent Dry Tech in this action.[24] On October 14, 2019, Pennsylvania Counsel contacted Delaware Counsel and asked whether Delaware Counsel would represent Dry Tech in this lawsuit.[25] This is where things went awry. According to Dry Tech, there was a miscommunication as to who would retain Delaware Counsel for Dry

---

[22] Judicial Action Form (Trans. ID. 64515828).
[23] Kropp Aff. ¶¶ 4–5.
[24] *Id.* ¶ 5.
[25] *Id.* ¶ 6.

6

Tech.[26] Dry Tech believed that Pennsylvania Counsel retained Delaware Counsel to represent it in the lawsuit.[27] Pennsylvania Counsel believed that Dry Tech would contact and retain Delaware Counsel after Pennsylvania Counsel confirmed with Delaware Counsel that it would assist Dry Tech in the lawsuit.[28] Due to the miscommunication with Pennsylvania Counsel, Dry Tech did not retain Delaware Counsel until after Langston obtained the default judgment.[29]

Langston's Opposition to the Motion

In opposition to the Motion, Langston asserts he provided Dry Tech with opportunities to address and resolve this dispute prior to commencement of his lawsuit, and points to the multiple letters and emails he sent to Dry Tech over the course of several months — all of which went unanswered by Dry Tech.[30] Langston argues that if Dry Tech intended to dispute his claims, it should have responded to Langston's correspondence or, at the very least, should have responded to the Complaint in a timely manner.[31]

---

[26] *See id.* ¶ 7.
> [Dry Tech] and [Pennsylvania Counsel] miscommunicated with one another in that [Dry Tech] believed that [Pennsylvania Counsel] retained [Delaware Counsel] to represent [Dry Tech] in the law suit and [Pennsylvania Counsel] believed [Dry Tech] would contact and retain [Delaware Counsel] after [Pennsylvania Counsel] called and confirmed that [Delaware Counsel] could assist [Dry Tech] in the law suit.

[27] *Id.*
[28] *Id.*
[29] *Id.* ¶¶ 8–9.
[30] Pl. Resp. ¶¶ 3–6.
[31] *Id.* ¶ 6.

Langston further argues that Dry Tech has failed to establish excusable neglect for its failure to timely respond to the Complaint.[32]  Specifically, Langston argues that Dry Tech's miscommunication and failure to follow up to ensure Delaware Counsel had been retained on its behalf do not rise to the level of excusable neglect.[33]  Finally, Langston argues that Dry Tech's various defenses to his claims lack merit[34] and he will suffer substantial prejudice if the Court grants Dry Tech's Motion.[35]

## III.  DISCUSSION

### A.  Standard of Review

Pursuant to Superior Court Civil Rule 60(b), the Court may relieve a defendant of a default judgment for reasons including "[m]istake, inadvertence, surprise, or excusable neglect."  "Delaware courts favor Rule 60(b) motions, as they 'promote Delaware's strong judicial policy of deciding cases on the merits and giving parties to litigation their day in court.'"[36]  In support of this policy, the Court

---

[32] Pl. Resp.  ¶ 9.

[33] *Id.* ¶ 9.

[34] *Id.* ¶¶ 10–13.

[35] *Id.* ¶ 14.  Upon entry of default judgment, Langston, under the belief that Dry Tech did not intend to defend the lawsuit, sold the house in which Dry Tech performed the installation services at issue.

[36] *Watson v. Simmons*, 2009 WL 1231145, at *2 (Del. Super. Ct. Apr. 30, 2009) (quoting *Verizon Del., Inc. v. Baldwin Line Constr. Co, Inc.*, 2004 WL 838610, at *1 (Del. Super. Ct. Apr. 13, 2004)).

8

liberally construes Rule 60(b) and any doubts are resolved in favor of the defendant.[37]

For the Court to grant relief from a default judgment, the defendant must satisfy three elements:

> (1) excusable neglect in the conduct that allowed the default judgment to be taken; (2) a meritorious defense to the action that would allow a different outcome to the litigation if the matter was heard on its merits; and (3) a showing that substantial prejudice will not be suffered by the plaintiff if the motion is granted.[38]

The Court should consider either the possibility of a meritorious defense or possible prejudice to the plaintiff, "only if a satisfactory explanation has been established for failing to answer the complaint, e.g. excusable neglect or inadvertence."[39] Excusable neglect is neglect that "might have been the act of a reasonably prudent person under the circumstances."[40] Carelessness and negligence are not necessarily "excusable neglect" for purposes of setting aside a default judgment and not generally

---

[37] *Verizon Del., Inc.*, 2004 WL 838610, at *1.

[38] *Emory Hill & Co. v. Mrfruz LLC*, 2013 WL 5347519, at *3 (Del. Super. Ct. Sept. 24, 2013) (citations omitted).

[39] *Watson*, 2009 WL 1231145, at *2 (internal quotations omitted) (quoting *Apartment Cmtys. Corp. v. Martinelli*, 859 A.2d 67, 72 (Del. 2004)).

[40] *Battaglia v. Wilmington Sav. Fund Soc'y*, 379 A.2d 1132, 1135 n. 4 (Del. 1977); *Keith v. Melvin L. Joseph Constr. Co.*, 451 A.2d 842, 846 (Del. 1982). This Court and the Delaware Supreme Court have relied upon federal case law when analyzing whether a party's conduct constitutes excusable neglect. *See e.g.*, *Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Gibbs v. Air Canada*, 810 F.2d 1529, 1537–38 (11th Cir. 1987).

cognizable under Rule 60(b)(1).[41]  "[L]itigants and their counsel may not be allowed with impunity to disregard the process of the Court."[42]

## B.  Pennsylvania Counsel's Conduct

In *Standard Linen Service v. Sezna*,[43] the Court determined that the defendants' counsel's actions were reasonable and prompt, and therefore, rose to the level of excusable neglect.[44]  There, the defendants were personally served on December 4, 1979, however, due to "ensuing discussion" between the defendants as to who should be appointed counsel for them, counsel was not appointed until after the twenty-day period to respond to the complaint.[45]  On December 24, 1979, the defendants' counsel contacted the plaintiff's counsel, apprised him of the situation, and advised that "in all likelihood [he] would enter an appearance for [the] defendants."[46]  Despite this, the plaintiff moved for entry of default judgment three days later.[47]  The Court found that the plaintiff's counsel — aware of the defendants' predicament — acted with "extreme haste" in obtaining a default judgment, and the

---

[41] *See Cohen v. Brandywine Raceway Ass'n*, 238 A.2d 320, 325 (Del. Super. Ct. Jan. 26, 1968) ("A mere showing of negligence or carelessness without a valid reason may be deemed insufficient."); *see also Cline v. Hoogland*, 518 F.2d 776, 777 (8th Cir. 1975) ("Ignorance or carelessness of an attorney is not generally cognizable under Rule 60(b)(1).").

[42] *Emory Hill & Co.*, 2013 WL 5347519, at *3 (internal citations omitted).

[43] 1980 WL 317950 (Del. Super. Ct. Nov. 21, 1980).

[44] *Id*. at *2.

[45] *Id.* at *1.

[46] *Standard Linen Serv.*, 1980 WL 317950, at *1.

[47] *Id.*

defendants' counsel's actions were reasonable under the circumstances.[48]
According to the Court:

> There [was] no question that defendants' counsel acted reasonably under the circumstances. His prompt effort to notify plaintiff's counsel of the problems of defendants on December 24, 1979, his prompt notice to plaintiff's counsel of his appointment as defendants' counsel, and his prompt filing of the present motion on January 8, 1980, all point to his attempt to reasonably represent the interests of the defendants.[49]

Here, in contrast to the defendants' counsel's conduct in *Standard Linen Service*, Pennsylvania Counsel did not advise Langston's counsel that Dry Tech intended to defend the lawsuit, or that he was attempting to retain Delaware Counsel for Dry Tech. In fact, Pennsylvania Counsel never contacted Langston's counsel at all. Moreover, Pennsylvania Counsel did not promptly contact Delaware Counsel to secure a Delaware-barred attorney to represent Dry Tech in the lawsuit. Rather, Pennsylvania Counsel waited approximately two weeks to contact Delaware Counsel regarding Dry Tech's legal representation, and did not follow up to ensure that Dry Tech contacted Delaware Counsel or that Delaware Counsel filed a response before the twenty-day period lapsed.[50] The Court finds that Pennsylvania Counsel's conduct was not reasonable under the circumstances, and therefore, does not rise to excusable neglect.

---

[48] *Id.* at *2.
[49] *Id.*
[50] Kropp Aff. ¶ 6.

### C. Dry Tech's Conduct

The Court will not necessarily impute the negligence of a defendant's attorney to the defendant where the defendant has acted reasonably throughout the course of the proceedings and the default is solely attributable to the negligence of its attorney.[51] Thus, the Court must determine whether Dry Tech's actions were reasonable and the default is solely attributable to Pennsylvania Counsel's negligence.

In *Williams v. Delcollo Electric, Inc.*, the Court vacated a default judgment against a defendant corporation where the default was the sole result of its insurer's neglect and the defendant corporation acted reasonably throughout the course of the proceedings.[52] There, the defendant forwarded a copy of the summons and Complaint to its insurer.[53] The defendant's insurer forwarded a copy of the summons and Complaint via certified mail, return receipt requested, to its law firm, requesting its lawyer enter his appearance on behalf of the defendant.[54] The insurer's letter with the enclosure, however, never arrived at the law firm because the address

---

[51] *See Williams*, 576 A.2d at 686 ("Generally, where a defendant's default is due solely to the neglect of the defendant's insurer, that neglect will not be attributed to the defendant, and the default will be vacated on motion."); *but see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 396, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("[W]e have held that clients must be held accountable for the acts and omissions of their attorneys.").

[52] 576 A.2d 683 (Del. Super. Ct. 1989).

[53] *Id.* at 684.

[54] *Id.*

on the envelope was incorrect.[55] The twenty-day period to respond to the complaint lapsed, and neither the defendant corporation nor its insurer knew that a response had not been filed.[56] The Court held that where a defendant acts reasonably and promptly in reporting the matter to its representative, and the default is solely attributable to the neglect of the latter, the neglect will not be imputed to the defendant.[57] In *Williams*, the Court determined that the defendant had every reason to believe that the matter would be prudently handled by its insurer, noting the defendant's prompt turnover of the plaintiff's demand letters, summons, and complaint to the insurer.[58] The Court held that because the defendant's conduct was reasonable throughout the proceedings and its default was solely the result of the insurer's neglect, the insurer's neglect would be not be attributed to the defendant.[59]

In *Apartment Communities Corp. v. Martinelli*,[60] the Delaware Supreme Court, affirming the Superior Court, held that a defendant corporation did not act reasonably, and thus, its conduct did not rise to excusable neglect, where its employee accepted service on its behalf and took no action because she did not

---

[55] *Id.*

[56] *Williams*, 576 A.2d at 684.

[57] *Id.* at 686 (citing 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 55.10[2], at 55–60 (1988)); *see also West v. Wood*, Del. Super. Ct., C.A. No. 40, 1961, Carey, Judge (May 25, 1961).

[58] *Id.*

[59] *Id.*

[60] 859 A.2d 67 (Del. 2004).

recognize the significance of the summons and complaint.[61]  Relying on the Eleventh

Circuit's holding in *Gibbs v. Air Canada*[62] and the Fifth Circuit's holding in *Rogers*

*v. Hartford Life & Accident Ins. Co.*,[63] the Delaware Supreme Court held that it is

the responsibility of the defendant corporation to ensure that its employees who

accept service of process know when and to whom the complaint should be

forwarded, and once a defendant corporation is served, it is "responsible for dealing

with the complaint in a timely manner."[64]

In *Pelican Production Corp. v. Marino*,[65] the Tenth Circuit held that a plaintiff

failed to proffer any showing that its former counsel's failure to respond to the

defendant's motion to dismiss constituted excusable neglect.[66]  The court found the

plaintiff's argument that there was a "communication gap" between it and its former

counsel unpersuasive, and noted:

> The failure of [the plaintiff] to produce any affidavit from its former
> attorney, either voluntarily given or compelled by subpoena, as to the

---

[61] *Id.* at 72.

[62] 810 F.2d 1529, 1537 (11th Cir. 1987).  In *Gibbs v. Air Canada*, the Eleventh Circuit held that the defendant's failure to follow up and confirm in-house counsel's receipt of the complaint, coupled with its mail clerk's carelessness, did not constitute excusable neglect.  The court noted that a defendant cannot simply forward a complaint to its legal counsel and do nothing — there need to be some "minimum procedural safeguards" related to "checking up on process that it has in fact reached its destination and that action is being taken" on the defendant's behalf.

[63] 167 F.3d 933, 938-39 (5th Cir. 1999) In *Rogers*, the Fifth Circuit held there was no excusable neglect where a commercial carrier lost the complaint while attempting to deliver it to the defendant's claims office and the defendant corporation failed to ensure that action was being taken in the lawsuit.

[64] *Apartment Cmtys. Corp.*, 859 A.2d at 71.

[65] 893 F.2d 1143 (10th Cir. 1990).

[66] *Id.* at 1146.

attorney's explanation for the failure to answer the motion to dismiss, cannot be ignored. . . . We believe a most obvious void exists where a party claims that its counsel's activities were not its own, but fails to demonstrate to the court any effort to produce explanation from its former counsel for his conduct.[67]

Here, Dry Tech fails to demonstrate that it acted reasonably throughout the course of this proceeding. First, Dry Tech was aware that Langston intended to file suit. It is undisputed that Dry Tech received multiple letters and emails in May and June 2019 warning that Langston would file a complaint against Dry Tech if it did not respond to his demands. Based on the record before the Court, Dry Tech's response to these communications was to do nothing. Then, when served with process on September 16, 2019, Dry Tech waited until "early October of 2019" before sending the Complaint to Pennsylvania Counsel – leaving, at best, six days before the twenty-day period expired.[68] Dry Tech offers no explanation why it did not promptly contact Pennsylvania Counsel about the lawsuit, especially when Pennsylvania Counsel had represented Dry Tech in legal matters in the past. Upon service of process, a reasonably prudent person would have, at least, promptly consulted with an attorney to ascertain his rights and obligations.[69] And, it was Dry

---

[67] *Id.* at 1146–47 (citing *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970)).

[68] Kropp Aff. ¶ 4.

[69] *Capitol Cleaners & Launderers Inc. v. Twinning Rest. Assoc. Inc.*, 2018 WL 1005309, at *2 (Del. Super. Ct. Feb. 20, 2018) (quotations omitted); *see also Williams v. Delcollo Elec. Inc.*, 576 A.2d 683, 686 (Del. Super. Ct. 1989) (Upon service of process, a defendant that prudently and immediately turns the summons and complaint over to its insurer is conduct of a reasonably prudent person); *Watson v. Simmons*, 2009 WL 1231145, at *2 (Del. Super. Ct. Apr. 30, 2009) ("[I]t is unreasonable not to seek legal counsel upon receiving notice of a complaint.").

Tech's responsibility to ensure that the Complaint would be handled in timely manner.[70]

Although Dry Tech believed that Delaware Counsel had been retained, Dry Tech never followed up with Pennsylvania Counsel or Delaware Counsel to ensure that that had in fact occurred. Dry Tech never followed up to ensure that the Complaint would be handled in a timely manner, i.e., that a response would be filed before the twenty days expired. Dry Tech's only explanation for what occurred is that:

> Pennsylvania [C]ounsel recommended Dry Tech retain [Delaware Counsel]. However, due to a miscommunication and Dry Tech's misunderstanding about which counsel would respond to the Complaint, Dry Tech did not reach out to discuss the case with [Delaware Counsel].[71]

Even after a month had passed and Dry Tech never heard from Delaware Counsel or Pennsylvania Counsel, the record shows Dry Tech did nothing. The only reason Dry Tech found out that Delaware Counsel had not been retained and a response to the Complaint had not been filed was because Delaware Counsel called Dry Tech in November 2019 to ask if Dry Tech still needed representation.[72]

---

[70] *See Apartment Cmtys. Corp.*, 859 A.2d at 71.

[71] Def. Mot. ¶ 6.

[72] *Id.* At the hearing, Delaware Counsel stated that when he contacted Dry Tech asking whether Dry Tech still needed his services in this matter, Dry Tech was under the impression that Pennsylvania Counsel had already retained his services on Dry Tech's behalf.

16

Delaware courts and the federal circuit courts have consistently held that simply forwarding the complaint to legal counsel is not enough to establish excusable neglect; the defendant must ensure that action is being taken on its behalf and its interests are being protected.[73] Dry Tech blames its failure to respond to the Complaint on the alleged miscommunication between itself and Pennsylvania Counsel, yet fails to substantiate such miscommunication and confusion.[74] The Kropp Affidavit provides no explanation or support for Dry Tech's belief that Pennsylvania Counsel would retain Delaware Counsel on its behalf. Nor does it provide a factual basis for Pennsylvania Counsel's belief that Dry Tech would contact Delaware Counsel.

The record demonstrates that after Dry Tech placed the Complaint in Pennsylvania Counsel's hands, it made no effort to follow up and confirm that

---

[73] *See Apartment Cmtys. Corp.*, 859 A.2d at 71 ("Where the sheriff has properly served process upon a defendant corporation, that corporation is thereby responsible for dealing with the complaint in a timely manner."); *Lee v. Charter Commc'ns VI, LLC*, 2008 WL 73720, at *2 (Del. Super. Ct. Jan. 7, 2008) ("[A]t a minimum, [a defendant] should have questioned whether its interests were being properly protected by [the entity the defendant believed was representing him]."); *Gibbs*, 810 F.2d at 1537 (noting that there needs to be some "minimum procedural safeguards" related to checking up on process that it has in fact reached its destination and that action is being taken on the movant's behalf); 7 Moore's Federal Practice ¶ 60.22[2], at 60–184 (2d ed. 1987) ("Parties desiring relief [under Rule 60(b)] must particularize, and generally do not acquit themselves of responsibility by showing merely that they placed the case in the hands of an attorney.").

[74] The Court gave Dry Tech the opportunity to submit an affidavit setting forth the facts explaining why the miscommunication constitutes excusable neglect, and Dry Tech failed to submit an affidavit from Pennsylvania Counsel. *See Pelican Prod. Corp.*, 893 F.2d at 1144 ("We believe a most obvious void exists where a party claims that its counsel's activities were not its own, but fails to demonstrate to the court any effort to produce explanation from its former counsel for his conduct.").

Delaware Counsel had been retained and action was being taken on its behalf. Dry Tech cannot rely upon a miscommunication between itself and Pennsylvania Counsel to establish excusable neglect where it failed to demonstrate it took reasonable and prompt measures to ensure that its interests were being protected.[75] In sum, Dry Tech cannot escape responsibility for Pennsylvania Counsel's conduct when Dry Tech itself failed to act reasonably.[76]

## IV. CONCLUSION

Based on well-established case law, the Court finds Dry Tech has failed to establish excusable neglect under Rule 60(b)(1).[77] For the reasons explained above, Defendant Exterior Pro Solutions, Inc. d/b/a Dry Tech Waterproofing Solutions's Motion for Relief from Judgment is **DENIED.**

**IT IS SO ORDERED.**

*Jan R. Jurden*

_____

Jan R. Jurden, President Judge

cc: Prothonotary

---

[75] *See Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994) ("Mere lack of communication" between an attorney and client "does not excuse compliance with the rules, or from the penalties for failing to do so.").

[76] *See Williams*, 576 A.2d at 686.

[77] Because Dry Tech has failed to satisfy the first prong of Rule 60(b), the Court need not consider Dry Tech's alleged meritorious defenses or the prejudice to Langston. *See Verizon Del., Inc.*, 2004 WL 838610, at *1.

18