# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TERRY DALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  N19C-10-221 VLM |
| | ) | |
| PACIFIC RIM CAPITAL, INC., | ) | |
| TOYOTA MATERIAL | ) | |
| HANDLING NORTHEAST INC., | ) | |
| SG EQUIPMENT FINANCE USA | ) | |
| CORP., CBRE GWS LLC, THE | ) | |
| RAYMOND CORPORATION | ) | |
| and ARBOR MATERIAL | ) | |
| HANDLING, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Submitted: June 1, 2020
Decided: October 20, 2020

*Upon Consideration of Defendant's Motion to Vacate Default Judgment*,
**GRANTED.**

Vincent J.X. Hedrick, II, Esquire of Bove & Hedrick, Attorneys at Law,
Wilmington, Delaware. *Attorney for Plaintiff*.

C. Scott Reese, Esquire of Cooch and Taylor, P.A., Wilmington, Delaware.
*Attorney for the Defendant*.

**MEDINILLA, J.**

**AND NOW TO WIT**, this 20th day of October, 2020, upon consideration of Defendant Toyota Material Handling Northeast, Inc.'s Motion to Vacate Default Judgment, Plaintiff Terry Dalton's Response in Opposition, oral arguments heard on June 30, 2020, and the record in this case, **IT IS HEREBY ORDERED** that Defendant's Motion is **GRANTED** for the following reasons:

1. Plaintiff Terry J. Dalton (Plaintiff) claims he suffered injuries to his right hand, including a finger amputation, while operating a "pallet jack" during the course and scope of his employment. On October 25, 2019, Plaintiff filed a Complaint against various Defendants, including Toyota Material Handling Northeast, Inc. (Toyota).[1] He alleges negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, and strict liability.[2]

2. On November 4, 2019, Plaintiff served Toyota though its registered agent, Corporation Service Company (CSC).[3] CSC forwarded the Summons and Complaint to James Petrucci, Esquire—a New York attorney, listed as Toyota's primary contact on the CSC Notice of Service of Process in the records of Toyota or Toyota Material Handling, Inc. (TMH), formerly Toyota Material Handling U.S.A.,

---

[1] Defendants include Pacific Rim Capital, Inc., SG Equipment Finance USA Corp., CBRE GWS LLC, the Raymond Corporation, and Arbor Material Handling, Inc.
[2] *See* Plaintiff's Complaint, D.I. 1.
[3] Plaintiff's Opposition to Defendant's Motion for an Order Vacating Default Judgment, D.I. 52 ¶ 1 [hereinafter Plaintiff's Opposition].

Inc. (TMHU).[4] Toyota's Answer was due on or before November 25, 2019.[5] Toyota failed to file its Answer.[6]

3. On January 13, 2020, Plaintiff moved for Default Judgment against Toyota under Superior Court Civil Rule 55 and, on that same date, Plaintiff's counsel served Toyota through CSC with a copy of Plaintiff's Motion.[7]

4. On January 28, 2020, this Court held a hearing to consider Plaintiff's Motion for Default Judgment. Toyota failed to appear or oppose, and this Court granted Plaintiff's Motion.[8] Plaintiff's counsel sent a letter to Toyota through CSC informing it that this Court had granted Plaintiff's Motion for Default Judgment and enclosed a copy of this Court's Order.[9]

5. In March of 2020, Toyota first learned of the judgment against it through another defendant.[10] Toyota contacted CSC after it performed a check of their records and was unable to locate the CSC transmittal or the Summons and Complaint.[11] It learned that the transmittal had been forwarded to Mr. Petrucci listed

---

[4] *See* Defendant's Motion for an Order Vacating Default Judgment, D.I. 39 at Ex. A ¶ 3 [hereinafter Defendant's Motion].

[5] *Id.*

[6] Remaining Defendants filed Answers and Cross Claims between December 3, 2019, and January 10, 2020.

[7] Plaintiff's Opposition ¶ 2.

[8] *See Terry J. Dalton v. Pacific Rim Capital, Inc., et al.*, No. N19C-10-221 VLM (Del. Super. Jan. 28, 2020) (ORDER).

[9] Plaintiff's Opposition at Ex. A ¶ 4.

[10] Defendant's Motion ¶ 4.

[11] *Id.*

as the proper primary contact for Toyota or TMH/TMHU.[12]  General Counsel for TMHU conducted a search of corporate records for the Summons and Complaint transmitted by either CSC or Mr. Petrucci, and found no evidence that Mr. Petrucci sent the transmittal to Toyota or TMH/TMHU.[13]

6.      Mr. Petrucci is an attorney licensed to practice law in the State of New York and has been associated with the firm of Gibbons, PC for fifteen years.[14] Through an affidavit, Mr. Petrucci states he incorporated Toyota in February of 2012 but has not represented Toyota since 2013.[15]  When first contacted by Toyota for the CSC transmittal or Summons and Complaint, he advised he had no recollection of having received anything.[16] A later search of his records revealed he received the CSC transmittal while on a business trip in Chicago and that his assistant informed him about it.[17]

7.      Through his affidavit, he further explains that because of a mistaken belief that the transmittal was merely a courtesy copy that had already been sent to Toyota "and in accordance with prior instructions, [he] did not forward the transmittal to [Toyota]."[18]  He further states this belief was based on a prior

---

[12] *Id.* ¶ 2.
[13] *Id.* ¶ 3.
[14] *See* Defendant's Motion at Ex. B ¶1.
[15] *See id.* at Ex. B ¶¶ 2, 4.
[16] *Id.* at Ex. B ¶ 5.
[17] *Id.* at Ex. B ¶ 6.
[18] *Id.*

experience that occurred shortly after Toyota's creation in 2012 where, after receiving a notice directed to Toyota, he contacted its General Counsel[19] and was informed that Toyota had received the same notice, and no action was required from him.[20]

8.    After Toyota learned of Mr. Petrucci's failure to act, counsel for both sides were in communications in April and May of 2020, including on at least two occasions—on April 20 and May 6.[21]    During their communications, Toyota provided information and documents to Plaintiff's counsel regarding the product in the underlying lawsuit, and requested Plaintiff consider voluntarily vacating the default against it.  Plaintiff's counsel declined to do so on May 6, 2020.

9.    On May 13, 2020, C. Scott Reese, Esquire filed his Entry of Appearance on behalf of Toyota as Delaware counsel and, and on June 1, filed this Motion under Rule 60(b).[22]  Plaintiff's Opposition followed on June 24, 2020.[23]  The Court heard oral arguments on June 30, 2020.  Having considered the pleadings, the authority in support, and oral arguments presented, the motion is ripe for review.

---

[19] *Id.* at Ex. B ¶ 3.
[20] *Id.*
[21] Plaintiff's counsel maintains Toyota did not contact him until April 20 and he notified Toyota on May 6 that he would not voluntarily lift the default.  Toyota's counsel suggests more communications took place but did not provide specific dates.
[22] *See* Defendant's Motion.
[23] *See* Plaintiff's Opposition.

## Standard of Review

10.    A motion to vacate a default judgment under Rule 60(b) is addressed to the sound discretion of the trial court.[24] Our courts favor Rule 60(b) motions, as they "promote Delaware's strong judicial policy of deciding cases on the merits and giving parties to litigation their day in court."[25]  In furtherance of this policy, any doubts should be resolved in favor of the moving party.[26] Because courts favor Rule 60(b) motions to allow each party to be heard on the merits of the case,[27] the rule is liberally construed.[28] Yet this liberal policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that is] largely within the domain of the trial judge's discretion."[29]

## Contentions of the Parties

11.    Toyota moves to vacate under both under 60(b)(1) and (6).  Toyota argues first that Mr. Petrucci's failure to forward the Complaint and Summons to Toyota constitutes excusable neglect under Rule 60(b)(1) because he reasonably believed it was a courtesy copy, it has a meritorious defense and no prejudice will

---

[24] *Watson v. Simmons*, 2009 WL, 1231145, at *1 (Del. Super. Apr. 30, 2009).
[25] *Id.* (quoting *Verizon Delaware, Inc. v. Baldwin Line Constr. Co., Inc.*, 2004 WL 838610, at *1 (Del. Super. Apr. 13, 2004)).
[26] *Id.* (citing *Verizon Delaware*, 2004 WL 838610, at *1).
[27] *Apartment Communities Corp. v. Martinelli*, 859 A.2d 67, 69 (Del. 2004) (citing *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)).
[28] *Verizon Del., Inc. v. Baldwin Line Constr. Co., Inc.*, 2004 WL 838610, at *1 (Del. Super. Apr. 13, 2004).
[29] *Apartment Communities Corp*, 859 A.2d at 69.

be suffered by Plaintiff. In the alternative, Toyota argues relief is warranted under Rule 60(b)(6) where the ability to respond timely was hampered by Mr. Petrucci and the COVID-19 pandemic.

12. Plaintiff argues that Toyota's failure to answer the Complaint, respond to the Motion for Default Judgment, and not timely respond to the entry of default do not constitute excusable neglect nor extraordinary circumstances under Delaware law.

**Discussion**

**A. Toyota does not establish Excusable Neglect under Rule 60(b)(1)**

13. The court may set aside a default judgment for "[m]istake, inadvertence, surprise, or excusable neglect."[30] Under 60(b)(1), Toyota must show that: (1) their conduct in failing to respond was the product of excusable neglect; (2) they have a meritorious defense that would allow for a different result if the case was heard on the merits; and (3) the plaintiff will not suffer substantial prejudice if the motion is granted.[31]

14. In exercising its discretion under Rule 60(b)(1), the Court, with deference to the policy favoring disposition of cases on their merits, generally favors

---

[30] DEL. SUPER. CT. CIV. R. 60(b)(1).
[31] *Verizon Del.*, 2004 WL 838610, at *1.

such motions upon almost any reasonable excuse.[32] At the core of these considerations is an examination of whether the conduct of the moving party was the conduct of a reasonably prudent person,[33] and the Court must first find excusable neglect before considering the elements of whether there is a meritorious defense or substantial prejudice.[34] Excusable neglect is "neglect which might have been the act of a reasonably prudent person under the circumstances."[35] "A mere showing of negligence or carelessness without a valid reason may be deemed insufficient."[36]

15. Toyota asks this Court to follow the rationale in *Williams v. Delcollo Electric, Inc.*[37] because the neglect should not be attributable to Toyota. In *Williams,* the Court vacated a default judgment against a defendant company where the neglect was not attributable to the defendant,[38] but rather to the defendant's insurer.[39] There, the defendant had knowledge of the complaint and forwarded a copy to the insurer. The insurer subsequently forwarded the complaint to the defendant's law firm.[40] However, the insurer incorrectly addressed the envelope and the law firm never

---

[32] *Keith v. Melvin L. Joseph Const. Co.*, 451 A.2d 842, 846 (Del. Super. 1982) (citing *Vechery v. McCabe*, 100 A.2d 460 (Del. 1953)).
[33] *Id.*
[34] *Langston v. Exterior Pro Sols., Inc.*, 2020 WL 1970536, at *3 (Del. Super. Apr. 22, 2020).
[35] *Apartment Communities Corp.*, 859 A.2d at 70 (citing *Battaglia v. Wilm. Savs. Fund Soc.*, 379 A.2d 1132, 1135 n. 4 (Del. 1977)).
[36] *Watson v. Simmons*, 2009 WL 1231145, at *2 (Del. Super. Apr. 30, 2009) (quoting *Cohen v. Brandywine Raceway Ass'n*, 238 A.2d 320, 325 (Del. Super. 1968)).
[37] *Williams v. Delcollo Electric, Inc.*, 576 A.2d 683 (Del. Super. 1989).
[38] *Id.* at 686.
[39] *Id.*
[40] *Id.* at 684.

7

received it.[41]  The failure to file an answer resulted in default judgment entered against it.[42]  The Court held that the defendant company acted reasonably and the insurer's neglect would not be imputed on the defendant.[43]

16.  *Williams* is distinguishable from the facts here.  Toyota listed Mr. Petrucci as the primary contact on the CSC Notice of Service of Process in the records of Toyota.  Unlike *Williams,* legal documents reached the intended person.  When service of a complaint is "complete and legal, it is immaterial ... that the agent does not communicate the fact of service to [the] principal."[44]  Moreover, where case law makes clear that it is unreasonable not to seek legal counsel upon receiving notice of a complaint,[45] it is even more inexplicable how a fifteen-year practitioner ignored or failed to act upon such notice.  His mistakes were careless at best, negligent, at worst.  And just as in *Sanders v. Cseh*[46] where an employee of defendant's law firm mistakenly assumed a filed complaint was related to a different

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 686.

[44] *Apartment Communities Corp. v. Martinelli*, 859 A.2d 67, 71–72 (Del. 2004) (quoting *Cohen v. Brandywine Raceway Ass'n*, 238 A.2d 320, 324 (Del. Super. 1968)).

[45] *Watson v. Simmons*, 2009 WL, 1231145, at *3 (Del. Super. Apr. 30, 2009) (citing *Murzyn v. Locke*, 2006 WL 1195628, at *2 (Del. Super. Mar. 13, 2006); *Keith v. Melvin L. Joseph Constr. Co.*, 451 A.2d 842, 846 (Del. Super. 1982)).

[46] *Sanders v. Cseh*, 2006 WL 2742337 (Del. Super. Sept. 22, 2006).

matter, this Court must consider that "[c]arelessness and negligence are not necessarily 'excusable neglect.'"[47]

17. A closer look at Mr. Petrucci's vague and inconsistent explanation only raises more questions. First, he had no recollection of having received the transmittal. His affidavit is unclear as to when he received notice of the litigation in Delaware as he provides no dates as to when he learned that a Summons and Complaint came into his office, except to say that he recalls getting information while attending a conference in Chicago at a date/time unknown. The affidavit is also silent as to when he received or what he did as to the other notices, including the Motion for Default Judgment or this Court's Order entering the default. The Court finds Mr. Petrucci's conduct is not neglect considered the act of a reasonably prudent person under the circumstances to satisfy Rule 60(b)(1). This applies to Toyota's conduct as well.

18. It remains unclear how one isolated event of an unrelated "notice" in 2013 would inform an agent's decision to ignore documents sent to his attention today. Nevertheless, this is the rationale. He states he acted *under the direction* of Toyota's General Counsel from an event that occurred shortly after he incorporated Toyota in 2012. Accepting Mr. Petrucci's representation that he ignored legal

---

[47] *Id.* at *2 (citing *McDonald v. S & J Hotel Enters., L.L.C.*, 2002 WL 1978933, at *2 (Del. Super. Aug. 27, 2002)).

9

documents believing them to be courtesy copies, he did so under Toyota's direction. Accordingly, his conduct must be imputed on Toyota for its failure to act reasonably under the circumstances. Thus, Toyota cannot rely on *Williams*.

19. Similar guidance in *Verizon Del. v. Baldwin Line Constr. Co., Inc.*,[48] leads the Court to the same conclusion. The *Verizon* Court denied the motion to vacate a default judgment holding that the defendant corporation's failure to appoint a new registered agent after learning about the death of their agent did not constitute excusable neglect.[49] Mr. Petrucci's affidavit confirms that his representation ended in 2013 and alludes to an unawareness that he held a current role with or remained obligated to Toyota.[50] Though Toyota had a valid registered agent and did not violate Del. Const. art IX, § 5 or 8 *Del. C.* § 371(b)(2), it failed to properly instruct its agent, remind him of his obligations or appoint a new one.

20. This is also consistent with the holding in *Apartment Communities Corp. v. Martinelli*,[51] that the failure to acknowledge the importance of a complaint—and advise appropriate management personnel—did not establish the defendant's excusable neglect.[52] This Court echoes that "it [is] the responsibility of the defendant…to ensure that [persons] who are capable of accepting service of

---

[48] *Verizon Del. v. Baldwin Line Constr. Co., Inc.*, 2004 WL 838610 (Del. Super. Apr. 13, 2004).
[49] *Id.* at *2.
[50] Defendant's Motion, at Ex. A ¶ 2.
[51] *Apartment Communities Corp. v. Martinelli*, 859 A.2d 67 (Del. 2004).
[52] *Id.* at 69-72.

process know when and to whom the complaint should be forwarded."[53]  Though

Mr. Petrucci was not an employee, Toyota bore the responsibility to ensure that Mr.

Petrucci understood his obligation to the company.  Its failure to do so created a

black hole.  It cannot argue that the stale direction it gave its primary contact in 2013

supports a finding of excusable neglect today.

21.     The Court finds an insufficient factual basis to establish excusable

neglect as is required under Rule 60(b)(1).  Because Toyota cannot establish

excusable neglect, the Court need not address the meritorious defense[54] and

substantial prejudice prongs in setting aside a default judgment.[55]

**B.     Toyota satisfies Rule 60(b)(6)**

22.     Under Rule 60(b)(6), the Court must consider whether to set aside a

default judgment for "*any other reason* justifying relief from the operation of

judgment."[56]  The language of Rule 60(b)(6) "vests power in courts adequate to

enable them to vacate judgments whenever such action is appropriate to accomplish

justice."[57]  The Court resolves any doubt in favor of Toyota because of the sound

public policy in Delaware that favors the determination of actions on the merits.

---

[53] *Id.* at 71.

[54] Inexplicably, Toyota did not analyze or provide its meritorious defense in its initial Motion to Vacate Default Judgment and only after prompting from the Court did Toyota unsuccessfully attempt to address this prong during oral arguments.  Plaintiff's counsel objected to the Court's consideration of argument as untimely and waived.

[55] *Apartment Communities Corp.*, 859 A.2d at 72 (Del. 2004).

[56] DEL. SUPER. CT. CIV. R. 60(b)(6).

[57] *Chaverri v. Dole Food Co., Inc.*, 220 A.3d 913, 922 (Del. Super. 2019) (emphasis added).

11

23.     Plaintiff's counsel is correct that the authority presented support his position that Toyota fails to establish excusable neglect.  It is also true that Toyota was at a disadvantage and could have presented its case for vacating its judgment sooner.   Plaintiff cites to *Lewes Dairy Inc. v. Walpole*[58] and that he is "not their excuse"[59] for what he argues is an untimely filing by Toyota to seek relief.  Though Toyota faced a myriad of issues in responding, this Court disagrees that it should result in a default judgment.

24.     Toyota acted reasonably upon receiving notice in March of 2020.  It faced several hurdles during an unprecedented time that included national and local states of emergencies when the world was initially reacting to the global pandemic.  It conducted an investigation to retrace steps that included obtaining information from its registered agent and its primary contact.  As outlined, Mr. Petrucci's failures reflect a careless or negligent mismanagement of Toyota's interests coupled with troublesome memory issues.  It is unclear at what point he finally provided Toyota with accurate information but there is no evidence to suggest that Toyota failed to respond once it was on notice of the judgment against it.

---

[58] *Lewes Dairy, Inc. v. Walpole*, 1996 WL 111130 (Del. Super. Jan. 5, 1996).
[59] Plaintiff's response to this Court when asked during Oral Arguments why he argued untimely delay where it was undisputed that he and counsel had engaged in communications to include production of documents from Toyota and a request that he voluntarily lift the default judgment.

12

25. The Court takes into consideration the ongoing exchanges that took place in April and May between counsel for both sides. Plaintiff argues it was only two discussions. No matter. Plaintiff's counsel engaged in communications with Toyota and leveraged the default judgment to obtain information from Toyota. Toyota complied and produced documents and information germane to the underlying claims. In turn, Toyota requested and waited for Plaintiff's counsel to consider whether he would voluntarily lift the default. He declined to do so after he received materials from Toyota.

26. Though it is true that Plaintiff's counsel is "not their excuse," the Court finds that Plaintiff benefitted from Toyota's participation in the legal process, receiving from this defendant documents and information regarding the product alleged to have caused Plaintiff's injury. Plaintiff now seeks to preclude Toyota from continuing to participate where it may no longer prove beneficial. On these limited facts, the Court finds valid reason to permit Toyota its day in court.

## Conclusion

Toyota has not met its burden under Superior Court Rule 60(b)(1) to show its failure to respond was the product of excusable neglect. The Court finds a valid reason exists under Rule (60)(b)(6) to accomplish justice in light of the narrow circumstances presented in this case. Therefore, Defendant's Motion to Vacate Default Judgment is **GRANTED**.

**IT IS SO ORDERED.**

<u>/s/ Vivian L. Medinilla</u>
Vivian L. Medinilla
Judge

14