APARTMENT COMMUNITIES COR-
PORATION d/b/a Harbor House
Apartments, a Delaware corporation,
Defendant Below, Appellant,

v.

Dennis E. MARTINELLI and Angela
Martinelli, husband and wife,
Plaintiffs Below, Appellees.

No. 105,2004.

Supreme Court of Delaware.

Submitted: July 28, 2004.
Decided: Oct. 5, 2004.

Daniel R. Losco, Esquire and Margaret F. England, Esquire, Losco & Marconi, P.A., Wilmington, Delaware, for appellant.

Joseph W. Benson, Esquire and Andrew G. Ahern, III, Esquire, Joseph W. Benson, P.A., Wilmington, Delaware, for appellees.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice.

This is an appeal from a final judgment. The Superior Court denied the defendant-appellant's, Apartment Communities Corporation ("ACC"), motion to vacate the default judgment entered against them in favor of the plaintiff-appellees, Dennis E. Martinelli and Angela Martinelli. ACC has raised two issues in this appeal. First, ACC argues that the Superior Court abused its discretion in denying its motion to set aside the default judgment. Second, ACC contends that the Superior Court should have set aside the default judgment because the Martinellis failed to provide notice of the default judgment in what ACC characterizes "as an element of good faith."

We have concluded that both of ACC's arguments are without merit. Therefore, the judgment of the Superior Court must be affirmed.

### Facts

The Martinellis leased an apartment owned by ACC. The Complaint alleged that Dennis Martinelli was injured due to ACC's negligence in failing to maintain a common area of the apartment building. The Complaint states that on November 18, 2001 at 3:00 p.m., Dennis Martinelli was injured in the hallway of the apartment building in which he was living. Upon entering the hallway, Dennis Martinelli's left foot caught in a tear in the carpet on the steps. Dennis Martinelli lost his balance, fell down the stairs, fell through the front door, and down concrete steps outside the front door. Dennis Martinelli's injuries were treated at the Christiana Hospital.

After notifying ACC of the incident, the Martinellis' claim was referred to Raphael & Associates, a claims management company. Raphael & Associates denied liability on behalf of ACC without an explanation and without written confirmation to the Martinellis' attorney. Raphael & Associates informed the Martinellis' attorney of that decision by leaving a telephone message with a paralegal in the attorney's office.

Thereafter, the Martinellis filed suit against ACC in June 2003. The Complaint was served on an employee of ACC, Patricia Frederick. ACC failed to answer the Complaint within twenty days. The Martinellis requested the entry of a default judgment and also requested an inquisition hearing to determine damages. That relief was granted. Following an inquisition hearing before a Superior Court Commissioner, judgment was entered against ACC in the amount of $16,990.87.

### *Motion to Vacate Denied*

Upon receiving a copy of the Commissioner's decision awarding damages to the Martinellis, ACC filed a Motion to Vacate Default Judgment and Stay Execution. ACC alleged that service had been improper (an argument not raised in this appeal), that the failure to file an answer was not the result of "willful neglect or gross misconduct," that a meritorious defense existed based upon the fraud and perjury of Dennis Martinelli, and that the Martinellis would suffer no legally cognizable prejudice if the default judgment was vacated.

ACC's motion asserted that Patricia Frederick "did not recognize the significance of the Summons and Complaint and did not advise appropriate management personnel that suit had been filed." No explanation was given in the motion as to what Patricia Frederick did or did not do with the Complaint after she accepted service of process. ACC's motion was not supported by affidavits or statements under oath.

The Martinellis filed a response to ACC's motion. They asserted that: service was proper pursuant to the relevant statutes; that there was no factual support for the claims of excusable neglect; and that the allegations of fraud and perjury were specious attacks on Dennis Martinelli's character that should be stricken as scandalous and impertinent. The Martinellis requested an award of attorney fees for being required to respond to the motion.

Following oral argument, the Superior Court denied ACC's motion to vacate the default judgment. It declined to award attorney fees to the Martinellis. ACC filed this appeal.

### *Standard of Review*

 Most courts have "adopted a policy in favor of resolving cases on their merits and against the use of default judgments."[1] That policy, however is " 'counterbalanced by considerations of social goals, justice and expediency, a weighing process [that is] largely within the domain of the trial judge's discretion.' "[2] Generally, three factors should be considered in order to determine whether entry of a default judgment should be set aside: first, whether culpable conduct of the defendant led to the default and, if so, was it excusable; second, whether the defendant

---

1. *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir.1999).

2. *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir.1990) (quoting *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir. 1970)).

has a meritorious defense; and third, whether the plaintiff will be prejudiced.[3]

Civil Rule 55(c) permits the Superior Court, in its discretion, to set aside a default judgment in accordance with Rule 60(b). As defined in Superior Court Civil Rule 60(b)(1), "[e]xcusable neglect is that neglect which might have been the act of a reasonably prudent person under the circumstances."[4] The Superior Court ruled that ACC had failed to establish excusable neglect for its failure to answer or otherwise plead to the Complaint filed by the Martinellis.[5] An appeal of a decision granting or denying a motion to vacate a default judgment is reviewed by this Court for abuse of discretion.[6]

### Superior Court Hearing

During the oral argument on ACC's motion to vacate the default judgment, the Superior Court asked counsel for ACC about the status of the employee who accepted service of the Complaint. That employee, Patricia Frederick, was initially characterized by ACC's counsel as "a clerical person" and "a low-level employee." He then acknowledged that she had been employed by ACC for at least five years and was a leasing agent with duties that included "leasing, collecting rents, and doing evictions . . . ." The attorney for ACC also acknowledged that the eviction obligations made her the person responsible for filing lawsuits for unpaid rent, summary possession, and receiving answers to complaints. Nevertheless, ACC's counsel argued that Patricia Frederick was a person " . . . not understanding the [legal] system that the filing and the service of the summons and the complaint starts a clock

running. Those are facts that she did not comprehend . . . ."

The Superior Court asked counsel for ACC: "How could she not have understood that it was a lawsuit and that it should have been brought to the attention promptly of her boss?" The explanation given for Patricia Frederick's conduct by ACC's counsel was that she "obviously" did not handle the complaint properly because she was a "low-level" employee. When asked by the Superior Court for affidavits to "make a stronger showing" why the default judgment should be vacated, ACC's counsel responded that it would "require some effort and some research to locate" individuals with that knowledge. ACC's counsel also stated that there was "not much point" in providing the Superior Court with an affidavit from Patricia Frederick.

### Superior Court Decision

■ The record reflects that ACC offered no affidavits or testimony from any potentially helpful witnesses in support of its motion. The Superior Court noted that "without a further developed record," it appeared that, Patricia Frederick, the ACC employee upon whom the Complaint was served, did not conduct herself as a reasonably prudent person. The Superior Court concluded that ACC had failed to demonstrate excusable neglect. Accordingly, the Superior Court denied ACC's motion to vacate the default judgment.

### Federal Precedent Persuasive

In *Canaday v. Superior Court*, this Court noted that the construction of the Superior Court Civil Rules are greatly in-

**3.** *See Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir.1982).

**4.** *Battaglia v. Wilmington Sav. Fund Soc'y*, 379 A.2d 1132, 1135 n. 4 (Del.1977). *See also Cohen v. Brandywine Raceway Ass'n*, 238 A.2d 320, 325 (Del.Super.Ct.1968).

**5.** *Keith v. Melvin L. Joseph Constr. Co.*, 451 A.2d 842 (Del.Super.Ct.1982).

**6.** *Battaglia v. Wilmington Sav. Fund Soc'y*, 379 A.2d at 1135.

fluenced by the federal judiciary's construction of the Federal Rules of Civil Procedure since these two sets of rules are almost identical.[7] In the context of denying a motion to open a default judgment, an analogous case arose in the Fifth Circuit.[8] In the *Rogers v. Hartford Life*[9] matter, Hartford failed to respond to a complaint because a commercial carrier lost the complaint while attempting to deliver it from the appellant's agent to appellant's claims office.[10] The Fifth Circuit affirmed the trial judge's determination that this was not excusable neglect. The Fifth Circuit stated that the corporation should have implemented at least " 'minimum internal procedural safeguards' " to avoid such mishaps.[11] Similarly, in the Eleventh Circuit, in *Gibbs v. Air Canada*, the sole reason that the appellant offered to explain its failure to answer the complaint was that a mail clerk misplaced the complaint.[12] The Eleventh Circuit held that this did not constitute a "sufficient excuse." [13]

### No Excusable Neglect

At the time Patricia Frederick accepted the Complaint on behalf of ACC in the case *sub judice*, she had been a full-time employee of ACC for about five years. Her duties included finding tenants, collecting rents, and evicting tenants. ACC contends that Patricia Frederick was a lower level clerical employee who would not understand the "big picture involved here." That contention is contradicted by the responsibilities of her job as a leasing agent. In the Fifth Circuit case of *Rogers* and the Eleventh Circuit case of *Gibbs*, when a mail clerk and a commercial carrier mishandled the complaints inadvertently, neither action was deemed to constitute excusable neglect.[14]

▆▆▆ Neither party contests that service of process upon Patricia Frederick was proper and timely. In such situations, it was the responsibility of the defendant, ACC, to ensure that all employees who are capable of accepting service of process know when and to whom the complaint should be forwarded. Where the sheriff has properly served process upon a defendant corporation, that corporation is thereby responsible for dealing with the complaint in a timely manner.[15] When service

7. *Canaday v. Superior Court*, 119 A.2d 347, 352 (Del.1956), *cited in Hoffman v. Cohen*, 538 A.2d 1096, 1098 (Del.1988). *See* Fed. R. Civ. P. 60(b).

8. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933 (5th Cir.1999) (holding that the loss of the complaint by the commercial carrier did not amount to excusable neglect).

9. *Id.*

10. *Id.* at 938.

11. *Id.* at 939.

12. *Gibbs v. Air Canada*, 810 F.2d 1529, 1537 (11th Cir.1987).

13. *Id. See Davis v. Safeway Stores, Inc.*, 532 F.2d 489, 490 (5th Cir.1976) (holding that lack of communication between defendant and insurance company after insurance company received the complaint from defendant did not constitute excusable neglect and indicated a lack of minimum internal procedural safeguards); *see also Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.1975) (holding that although the defendant received the complaint in a timely manner, the fact that the complaint was lost in the mail en route to defendant's counsel did not constitute excusable neglect).

14. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933 (5th Cir.1999); *Gibbs v. Air Canada*, 810 F.2d 1529 (11th Cir.1987).

15. *See* Del. Code Ann. tit. 8, § 321(a) (1974) (stating that service of process upon a corporation may be made at the "registration office or other place of business of the corporation").

of a complaint is "complete and legal, it is immaterial ... that the agent does not communicate the fact of service to [the] principal."[16]

■ ACC had the burden of demonstrating that its neglect was excusable.[17] Given the mere speculation on the part of ACC's counsel and the lack of any sworn affidavits to support ACC's motion to vacate the default judgment, the Superior Court properly concluded that ACC did not establish that Patricia Frederick's inaction in this case constituted excusable neglect. Accordingly, we hold that the Superior Court did not abuse its discretion in denying ACC's motion to vacate the default judgment. ACC should have implemented internal procedures to avoid the failure to respond to the Complaint that occurred in this case.[18]

### Other Considerations Moot

■ ACC acknowledges that it was required, as the defaulting party, to make some showing that if relief were granted the outcome of the action would be different. In other words, ACC was required to demonstrate that a meritorious defense to the action existed.[19] The Martinellis argue that ACC's claim of a meritorious defense, the claim that Dennis Martinelli committed fraud, consists entirely of assertions by ACC's counsel in the motion and at oral argument, and is wholly unsupported by sworn affidavits.

■ Moreover, the Martinellis submit that after the Superior Court found that there was an insufficient factual basis to support a finding of excusable neglect pursuant to Rule 60(b)(1), the issue of whether there is a meritorious defense became moot and should not be addressed in accordance with the holdings in *Battaglia*[20] and *Keith*.[21] We agree. It is well-established that the Superior Court should consider either "the possibility of a meritorious defense" or possible prejudice to the plaintiff, only if a satisfactory explanation has been established for failing to answer the complaint, e.g. excusable neglect or inadvertence.[22]

### Notice Not Required

■ The final issue is whether notice to ACC of the default judgment request was required. Superior Court Civil Rule 55(b)(2) provides for the entry of a judgment by default when the plaintiff's claim is not for a sum certain. That rule provides in pertinent part:

> If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

"Normally, an appearance is used to signify the overt act by a party involving some presentation or submission to the Court's

---

16. *Cohen v. Brandywine Raceway Ass'n,* 238 A.2d 320, 324 (Del.Super.Ct.1968).

17. *Id.*

18. *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d at 939.

19. *Battaglia v. Wilmington Sav. Fund Soc'y,* 379 A.2d 1132, 1135 (Del.1977); *Keith v. Melvin L. Joseph Constr. Co.,* 451 A.2d 842, 846 (Del.Super.1982).

20. *Battaglia v. Wilmington Sav. Fund Soc'y,* 379 A.2d at 1135–36.

21. *Keith v. Melvin L. Joseph Constr. Co.,* 451 A.2d at 846–47.

22. *Battaglia v. Wilmington Sav. Fund Soc'y,* 379 A.2d at 1135; *Keith v. Melvin L. Joseph Constr. Co.,* 451 A.2d at 846.

jurisdiction."[23] Generally, where there has not been a formal entry of appearance in an action, notice of a default judgment request is not required. ACC acknowledges that it did not enter a *formal* appearance and, therefore, was not entitled to notice on either the face of Rule 55(b)(2). Nevertheless, ACC argues that a party may sometimes "appear" in an action in ways other than by filing a pleading or entering a formal appearance with the court.

ACC submits that, under the circumstances of this case, it was entitled to receive notice of the Martinellis' request for the entry of a default judgment. In support of its position, ACC cites four federal cases that granted motions to vacate default judgments. In *Insurance Co. of North America v. S/S Hellenic Patriot*,[24] the plaintiffs acquiesced to the defendant's request for additional time to investigate the claim and file an answer. The motion for default was filed four days after the last extension without notice to the defendant—after the parties had extended the time for filing the complaint and the answer by almost eight months.[25] In *United States to the Use of Combustion Systems Sales, Inc. v. Eastern Metal Products & Fabricators, Inc.*,[26] defense counsel notified plaintiffs' counsel that the attempted service of the complaint was defective and offered to accept proper service—which was never done by the plaintiffs.[27] Also, counsel for plaintiffs

and defendants had entered into settlement negotiations before the plaintiffs filed its motion for default judgment.[28] In *Heleasco Seventeen, Inc. v. Drake*,[29] telephone calls between counsel concerned the entry of local counsel into the case, advised of the existence of a meritorious defense, and discussed extensions of time to answer—which defense counsel believed was indefinite.[30] In *Stuski v. United States Lines*,[31] the default was opened because there were two identical suits filed in federal and state courts and the defendant had filed an answer in only the state action. The insurance carrier had received the state complaint and forwarded it to counsel, but did not recognize that the second complaint, though identical in every other respect, was captioned in the federal court and was a separate action which also needed to be sent to counsel for defense.[32]

The case *sub judice* contains none of the facts which impelled the federal courts in the cases cited by ACC to exercise their discretion to open defaults based upon an appearance by the defendants that was less than formal. Although letters were exchanged between the Martinellis' counsel and a claims adjuster for ACC, there were no ongoing settlement negotiations, no statement of intent to defend, and no request to the Martinellis' attorney for a copy of any suit papers. The claims adjuster for ACC simply told a paralegal for

**23.** *Heleasco Seventeen, Inc. v. Drake*, 102 F.R.D. 909, 912 (D.Del.1984).

**24.** *Ins. Co. of N. Am. v. S/S Hellenic Patriot*, 87 F.R.D. 136 (S.D.N.Y.1980).

**25.** *Id.* at 137–38.

**26.** *United States to the Use of Combustion Sys. Sales, Inc. v. E. Metal Prods. & Fabricators, Inc.*, 112 F.R.D. 685 (M.D.N.C.1986).

**27.** *Id.* at 690.

**28.** *Id.* at 691.

**29.** *Heleasco Seventeen, Inc. v. Drake*, 102 F.R.D. 909 (D.Del.1984).

**30.** *Id.* at 911–14.

**31.** *Stuski v. United States Lines*, 31 F.R.D. 188 (E.D.Pa.1962).

**32.** *Id.* at 189–90.

the Martinellis' counsel by telephone that ACC was denying liability without an explanation and did not even confirm that denial in writing.

Federal Courts have noted that appearances " 'include a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim." '[33] Under the circumstances of this case, however, ACC did not "appear informally" in any reasonable sense of that term. The parties had no contact after the Complaint was filed. The record reflects that the pre-suit dealings between the Martinellis' attorney and the ACC claims adjuster did not constitute an informal appearance that required "good faith" notice to ACC of the Martinellis' request for the entry of a default judgment. Accordingly, in the absence of a formal appearance by ACC, notice of the filing of the request for a default judgment was not required by the unambiguous language of Rule 55(b)(2).

### Conclusion

The judgment of the Superior Court is AFFIRMED.

---

**33.** *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir.1989) (quoting 6 Moore's Federal Practice ¶ 55.05(3)).