**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER N CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:  August 3, 2020
Date Submitted:   June 30, 2020

Marcus Montejo, Esquire
Jason W. Rigby, Esquire
Prickett Jones & Elliott, P.A.
1310 King Street, Suite 303
PO Box 1328
Wilmington, DE 19899

Douglas J. Cummings, Jr., Esquire
Kollias Law, LLC
3513 Concord Pike, Suite 330
Wilmington, DE 19803

RE:   *James Rivest v. Hauppauge Digital, Inc.*
        C.A. No. 2019-0848-PWG

Dear Counsel:

Pending before me is a Section 220 action filed by a stockholder demanding financial information from an unregistered public corporation.  The corporation failed to answer and, following a court procedure adopted during the pandemic in which defendants submit written responses to default judgments rather than appear at a hearing, default judgment was entered against the corporation.  Hours later, the corporation's late response to the motion for default judgment was received by the court in the mail.  The corporation seeks to vacate the default judgment and the

stockholder disagrees. I find the corporation has met its burden of showing excusable neglect, a meritorious defense and that the stockholder will not be substantially prejudiced if the judgment is vacated. I recommend that the Court grant the motion to vacate the default judgment. This is a final report.

## I.  Background

On October 8, 2019, Plaintiff James Rivest ("Rivest"), a beneficial holder of common stock of Defendant Hauppauge Digital, Inc. ("Hauppauge"), sent a demand letter ("Demand") to Hauppauge at its principal place of business seeking an inspection of Hauppauge's financial statements and reports for 2016, 2017 and 2018, as well as any appraisals and valuations, in order to ascertain the value of Hauppauge stock.[1]  Hauppauge, which "develops, manufactures and sells personal computer based television tuners, data broadcast receivers and video capture products,"[2] did not respond.  On October 24, 2019, Rivest filed a complaint ("Complaint") with this Court to compel inspection of Hauppauge's books and records under 8 *Del. C.* §220.  Hauppauge failed to respond to the Complaint and, on December 4, 2019, Rivest filed a motion for default judgment.  A hearing on the motion was scheduled for April 15, 2020, but was cancelled due to the judicial

---

[1] Docket Item ("D.I.") 1, Ex. A.  In addition, Hauppauge did not respond to Rivest's previous demand on July 29, 2019, which requested Hauppauge's financial statements for the past three fiscal years to ascertain the value of Hauppauge's stock. *Id.*, ¶¶ 6 - 8.

[2] *Id.*, ¶ 3.

emergency that went into effect on March 16, 2020.[3]  On March 30, 2020, the parties were notified that, in lieu of rescheduling the hearing because of COVID-19 precautionary measures, Hauppauge had until April 20, 2020 to file a written response to the motion with the Court.[4]  Having received no response, the Court entered a default judgment against Hauppauge on April 24, 2020 at 9:50 a.m.[5]  Later that day, a response from Ken Plotkin ("Plotkin"), Hauppauge's Chief Executive Officer, was received in the mail by the Court and docketed at 2:30 p.m.[6]  The letter, which was dated April 20, 2020, detailed Plotkin's reasons for not producing the requested financial documents.  The Court asked Rivest to respond to Plotkin's letter.  His response was received on May 7, 2020, and argued Plotkin's letter was legally deficient since a corporation must be represented by counsel, and provided no basis for vacating the default judgment.[7]  On May 12, 2020, the Court received another letter from Plotkin dated May 5, 2020.[8]  The Court responded to Plotkin, on May 13, 2020, that there was nothing pending

---

[3] *See* Admin. Order Declaring Judicial Emergency (Del. Mar. 13, 2020); Admin. Order No. 4 Extending Judicial Emergency (Del. Apr. 14, 2020).

[4] D.I. 10. *See* Standing Order No. 3 Concerning COVID-19 Precautionary Measures (Del. Ch. Apr. 6, 2020) (implementing procedures during the Judicial Emergency authorizing the handling of default judgments through appearance by written filing).

[5] D.I. 11.

[6] D.I. 12.

[7] D.I. 15.

[8] D.I. 17.

before the Court since Hauppauge was not represented by counsel, but allowed Hauppauge 10 additional days to file a response.[9] Hauppauge's counsel entered his appearance on May 27, 2020 and the Court granted Hauppauge an extension until June 8, 2020 to respond to the default judgment.[10]

In its June 9, 2020 motion to vacate the default judgment ("Motion") and July 1, 2020 reply, Hauppauge asserts that it made a good faith effort to comply with the Court instructions, given that the Hauppauge employee responsible for responding to Rivest was furloughed on March 15, 2020 in response to COVID-19 issues, and Plotkin's mistaken belief that he could respond without assistance of Delaware counsel; it has a meritorious defense seeking confidentiality restrictions to protect Hauppauge from harm by disclosing nonpublic information; and Rivest will not suffer prejudice if the Motion is granted.[11] Hauppauge requests, in the alternative, that the default judgment order be amended to implement reasonable confidentiality restrictions.

Rivest's June 24, 2020 response argues the Motion should be denied because Hauppauge has offered no excuse for its seven months delay in responding to the action, no meritorious defense, and he will be prejudiced due to Hauppauge's

---

[9] D.I. 18.

[10] D.I. 22. Hauppauge requested an extension until June 15, 2020 to respond to the default judgment, which was opposed by Rivest. *See* D.I. 19; D.I. 20.

[11] D.I. 23.

actions.[12] He also opposes Hauppauge's alternative request to amend the default judgment to include confidentiality restrictions.

Both parties request attorneys' fees related to the Motion.

## II. Analysis

"Court of Chancery Rule 55(c) permits the court to set aside a default on the grounds identified in Court of Chancery Rule 60(b)."[13] Motions to vacate default judgments under Rule 60(b) are addressed to the discretion of the court.[14] "Delaware public policy favors deciding cases on the merits, leading to the inference that '[a]ny doubt should be resolved in favor of the petitioner.'"[15] Rule 60(b) should be construed liberally to give effect to that underlying policy. The Court considers three factors in determining whether to vacate a default judgment under Rule 60(b)(1): "first, whether culpable conduct of the defendant led to the default and, if so, was it excusable; second, whether the defendant has a

---

[12] D.I. 24.

[13] *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 112 (Del. Ch. 2017).

[14] *Cf. Old Guard Ins. Co. v. Jimmy's Grille, Inc.,* 860 A.2d 811 (Del. 2004); *Word v. Balakrishnan*, 2004 WL 780134, at *3 (Del. Super. Apr. 13, 2004), *aff'd,* 860 A.2d 809 (Del. 2004).

[15] *Word*, 2004 WL 780134, at *3 (citation omitted); *see also Dishmon v. Fucci*, 32 A.3d 338, 346 (Del. 2011); *Deutsche Bank Nat'l Tr. Co. v. Vleugels*, 2017 WL 2124425, at *2 (Del. Ch. May 10, 2017).

meritorious defense; and third, whether the plaintiff will be prejudiced."[16]

Excusable neglect has been described as "neglect which might have been the act of

a reasonably prudent person under the circumstances."[17] The defendant must first

establish excusable neglect before the Court considers whether the other factors

exist.[18] To assert a meritorious defense, the defendant need only show that there is

a possibility of a different result.[19] And, the defendant must show that the plaintiff

will not suffer substantial prejudice if the default judgment is vacated. Or, "[i]f

vacating the decision will result in prejudice to the non-defaulting party, the court

may remedy the prejudice by imposing terms or conditions, such as an award of

attorney's fees, as part of the order to vacate."[20]

Here, Hauppauge's response was untimely but was received by the Court

four days after the date designated in the Court's letter – and within a few hours of

---

[16] *Stevenson v. Swiggett*, 8 A.3d 1200, 1204-05 (Del. 2010); *Apartment Communities Corp. v. Martinelli*, 859 A.2d 67, 69-70 (Del. 2004); *Deutsche Bank Nat'l Tr. Co.*, 2017 WL 2124425, at *2 (citation omitted).

[17] *Stevenson*, 8 A.3d at 1205 (citing Ct. Super. R. 60(b)(1)); *see also OneWest Bank, F.S.B. v. Feeney*, 2013 WL 5977066, at *3 (Del. Ch. June 27, 2013) ("Court of Chancery Rule 60(b)(1) also lists excusable neglect as a reason for this Court to set aside a final judgment or order.").

[18] *Cf. Apartment Communities Corp.*, 859 A.2d at 72 (citations omitted); *OneWest Bank, F.S.B.*, 2013 WL 5977066, at *3.

[19] *Emory Hill & Co. v. Mrfruz LLC*, 2013 WL 5347519, at *5 (Del. Super. Sept. 24, 2013), *aff'd sub nom. Christiana Mall, LLC v. Emory Hill & Co.,* 90 A.3d 1087 (Del. 2014).

[20] *Word*, 2004 WL 780134, at *3; *see also Deutsch v. ZST Digital Networks, Inc.*, 2018 WL 3005822, at *9 (Del. Ch. June 14, 2018).

the entry of the default judgment. The process followed in this case – requiring a written response to a motion for a default judgment, rather than the standard in-person hearing – was newly implemented through Court of Chancery Standing Order No. 3, which was issued to facilitate court operations during the Judicial Emergency due to COVID-19.[21] The original hearing notice (which provided notice of an April 15, 2020 hearing that was subsequently cancelled) contained the statement that "[a]nyone who wishes to oppose the granting of relief as requested should be present at the hearing *with or without an attorney* (emphasis added)."[22] And, Hauppauge asserts that it furloughed many of its staff, including the person tasked with handling this matter, as of March 15, 2020 because of COVID-19 concerns.[23] A corporation must be represented before a court by a licensed attorney.[24] However, given the prior hearing notice's language, and the unusual circumstances under which Hauppauge was operating and economic difficulties at that time (including the slowness of mail and building closures) because of COVID-19, it is understandable that Plotkin responded to the Court directly (rather

---

[21] *See* Standing Order No. 3 Concerning COVID-19 Precautionary Measures (Del. Ch. Apr. 6, 2020).

[22] D.I. 9. The order granted by the Court contained the language as proposed by Rivest. D.I. 8.

[23] D.I. 23, ¶ 20.

[24] *See Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Del. 1990)(ORDER).

than through an attorney) by mail. And, Hauppauge's response was received by the Court four days after the response date in the Court's letter, and only a few hours after the default judgment had been entered. I acknowledge that Hauppauge failed to respond to Rivest's prior demands, the complaint and the motion for default judgment initially but I cannot conclude that its inaction constituted negligence "so gross as to amount to sheer indifference," or that it totally ignored the process, since it did respond almost simultaneously with the default judgment.[25] Therefore, having considered all of the circumstances, I find Hauppauge's delay in responding in this action was the result of excusable neglect.

Next, I consider whether Hauppauge has shown it has a meritorious defense, or the possibility of a different outcome. The issue in this case focuses on Hauppauge's claim that confidentiality protections are needed for the financial information demanded by Rivest and the default judgment lacks confidentiality limitations. Hauppauge contends unrestricted public disclosure of its nonpublic financial information to market competitors would be harmful to it, given its

---

[25] *See, e.g., Rehoboth-By-The-Sea v. Baris,* 2015 WL 3643496, at *3 (Del. Super. June 10, 2015) (citations omitted). Rivest cites *Stevenson v. Swiggett* as support that Hauppauge has ignored the process and the default judgment should not be vacated. 8 A.3d 1200, 1205 (Del. 2010) ("a defendant 'cannot have the judgment vacated where [the defendant] has simply ignored the process'") (citation omitted). The circumstances here differ from those in *Stevenson.* Unlike this case, in *Stevenson*, the motion to vacate the default judgment was filed almost three years after the entry of the default judgment and was based upon lack of notice due to defective service, and the trial court found the defendants were properly served. *Id.* at 1202, 1205.

current financial difficulties.[26]    Rivest responds that, based upon *Tiger v. Boast Apparel, Inc.*, there is no presumption of confidentiality in Section 220 productions and since Hauppauge is a public company that publicly disclosed its financial difficulties in case filings, there is no manifest injustice to publicly disclosing the requested financial information.[27]    Rivest indicates he "has not flatly refused to agree to any confidential restrictions," providing the example of his offer of confidentiality protections for his supplemental request of Hauppauge's 2020 financial information.[28]

The Delaware Supreme Court held, in *Tiger v. Boast Apparel, Inc.*, that Section 220 inspections are "not subject to a presumption of confidentiality."[29]    It also held that the Court of Chancery "has the power to impose reasonable confidentiality restrictions," if it weighs the "stockholder's legitimate interests in

---

[26] D.I. 23, ¶ 30.   Hauppauge points to industry competitors' actions in the past to weaponize "poor performance displayed on financial statements as well as representations alluding to or summarizing that information," to cause a loss of business with "reputable, large-scale sale platforms . . . for audio-visual and technology products." *Id.*, ¶ 15.  It also claims that Rivest attempted to "extort *extra*-pleading, public disclosure using the Default Judgment, unfairly, as leverage," when he demanded updated financial information for 2019 and 2020 in the April 24, 2020 letter that sought production of financial information under the default judgment. *See id.*, ¶ 14, Ex. A.  Rivest responds that he filed a supplemental demand with Hauppauge, consistent with Section 220 requirements. D.I. 24, ¶ 20.   I find no evidence that the letter was inappropriate in attempting to accomplish dual purposes.

[27] D.I. 24, ¶¶ 9-14.

[28] *Id.*, ¶ 18, Ex. C.

[29] 214 A.3d 933, 935 (Del. 2019), *reargument denied* (Aug. 26, 2019).

free communication against the corporation's legitimate interests in confidentiality."[30] And, a corporation does not need to "show specific harm that would result from disclosure," but a court "cannot conclude reflexively that the need [for confidentiality] is readily apparent."[31] Hauppauge argues that the information being sought is nonpublic since, during the timeframes requested (2016 - 2018), its registration statement was terminated and its stock delisted so its financial information was not reported publicly.[32] I find Hauppauge has met its burden of showing a meritorious defense, or the possibility of a different result regarding the imposition of confidential protections. Without presuming confidential protections are needed, I find sufficient evidence has been presented to support the possibility that, after an assessment of the associated benefits and harms, the Court may determine that some confidential restrictions should be imposed. This conclusion is based on the fact that the information demanded is not currently disclosed publicly,[33] and the allegations that disclosing the

---

[30] *Id.* at 939, 935.

[31] *Id.* at 939 (citations omitted).

[32] D.I. 26, ¶ 12; *see also* D.I. 23, Ex. B.

[33] Rivest argues that Hauppauge's repeated statements to the Court that it is undergoing "severe financial strain" and its previous voluntary disclosure of its financial condition to others shows that Hauppauge voluntarily disclosed financial information publicly. D.I. 24, ¶ 12. Those statements signal financial difficulties in a public manner but are not likely to have the same effect as if detailed financial statements are released. In addition, Rivest asserts that Hauppauge is an unregistered public company so the public has a "manifest interest in [its] financial performance." *Id.*, ¶ 14. Hauppauge's situation, as a

10

information without any confidentiality protections will inflict injury on Hauppauge's business. Rivest further argues that confidentiality protections are not warranted because of the age of the information demanded (from 2016 through 2018).[34] The materiality of financial information "lessens as it ages."[35] However, courts have recognized the difficulty in setting a precise "moment in time" when non-public financial information becomes stale, and have varied in their determinations as to when confidential treatment becomes unnecessary.[36] The

---

delisted public company, appears more similar to the circumstance in *Southpaw Credit Opportunity Master Fund LP v. Advanced Battery Techs., Inc.*, in which the defendant, although a public company, was not publicly reporting financial information, and the Court held it was "more akin to a private company for purposes of this analysis." 2015 WL 915486, at \*9 (Del. Ch. Feb. 26, 2015). In *Southpaw*, the Court found that the nature of the information and the defendant's confidential treatment of the information supported the execution of a confidentiality agreement, with the caveat that older financial records may not be entitled to confidential treatment. *Id.*, at \*10.

[34] D.I. 24, ¶¶ 9, 15.

[35] *Ravenswood Inv. Co., L.P. v. Winmill & Co. Inc.*, 2014 WL 7451505, at \*1 (Del. Ch. Dec. 31, 2014).

[36] *See, e.g., id.* ("financial information does not warrant confidential treatment after three years from the date of the document or information"); *Baker v. Sadiq*, 2016 WL 4988427, at \*2 (Del.Ch. June 8, 2016)(ORDER) (denying confidential designation of financials "from more than three years ago" because of staleness); *Quantum Tech. Partners IV, LP v. Ploom, Inc.*, 2014 WL 2156622, at \*18 (Del. Ch. May 14, 2014) (upholding a five year sunset provision for confidential designation since the information "will likely be so stale that its competitive value will be non-existent"); *Ad-Venture Cap. Partners, LP v. ISN Software Corp.,* CA. No. 6618-VCG, at 6-7 (Del. Ch. Mar. 5, 2012) (TRANSCRIPT) ("[I]t seems to me that it is likely that whatever the competitive value of the documents that I have ordered disclosed is that it will be so significantly reduced over a two-year period that that's the appropriate length of time.").

question whether the information demanded (from 2016 to 2018) is stale so that no confidential protections are needed remains to be determined.

Finally, I consider the third factor – whether Rivest has suffered prejudice because of Hauppauge's delay. Hauppauge argues Rivest will not suffer prejudice if the merits of the confidentiality issues are litigated, since Rivest had indicated, in the Demand that he would "agree to appropriate and reasonable confidentiality terms," and Plotkin's letter was received five hours after the default judgment was issued.[37] Rivest alleges he will be prejudiced because "for over a year, [he] has "sought books and records from [Hauppauge]" that he is "fundamentally entitled to as a stockholder."[38] I find no substantial prejudice to Rivest if the Motion is granted because the delay is not sufficient to overcome public policy favoring decision on the merits.

Accordingly, I conclude that Hauppauge has met its burden of showing excusable neglect, a meritorious defense and that Rivest will not suffer substantial prejudice if the Motion is granted.[39] However, recognizing that Section 220

---

[37] D.I. 23, ¶¶ 26, 27; *see also* D.I. 1, Ex. A.

[38] D.I. 24, ¶ 7.

[39] Since I recommend that the judgment be vacated, I do not address Hauppauge's alternative argument seeking to amend the judgment to implement reasonable confidentiality restrictions. The parties' requests for attorneys' fees related to the Motion will be addressed later.

actions are intended to be summary proceedings,[40] and given the delays that have

occurred related to this Section 220 action, I intend, once this report becomes final,

to ensure that this matter proceeds as expeditiously as possible in the future.

## III.  Conclusion

Based upon the reasons set forth above, I recommend that the Court grant

Hauppauge's motion to vacate the default judgment.  This is a final report and

notice of exceptions shall be filed within three days of the date of this report,

pursuant to Court of Chancery Rule 144(d)(2), given the summary nature of

Section 220 proceedings.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

---

[40] *See, e.g., KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 754-55 (Del. 2019) (as the statutory text of § 220 itself reflects, the Court of Chancery is entitled to "summarily order" an inspection).