# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PATRICIA O'ROURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-08-064 JRJ |
| | ) | |
| PNC BANK, MATCH GROUP, | ) | |
| INC., LEAF OF LIFE COVENANT | ) | |
| MINISTRY INCORPORATED, | ) | |
| LEAF OF LIFE COVENANT | ) | |
| MINISTRY INC., HAJIA LAMPO, | ) | |
| LAWANDA WILLIAMS, | ) | |
| EUROSTAR LUXURY MOTORS, | ) | |
| ALVANNDY VENTURES, AND | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted:  May 28, 2021
Date Decided:  August 9, 2021

## ORDER

Upon consideration of Defendant PNC Bank's Motion to Vacate Default Judgment Pursuant to Rule 60(b),[1] **IT APPEARS THAT**:

1.  On March 16, 2021, Plaintiff Patricia O'Rourke ("O'Rourke") filed a Motion Pursuant to Rule 55(b)(2) for Entry of Default Judgment ("Motion for Default Judgment") because Defendant PNC Bank ("PNC") had failed to timely

---

[1] Defendant PNC Bank's Motion to Vacate Default Judgment Pursuant to Superior Court Rule 60(b) ("Motion to Vacate Default Judgment") (Trans. ID. 66452921).

respond to her Complaint.[2]  On March 23, 2021, the Court entered default judgment against PNC.[3]

2.      The next day, PNC filed the instant Motion to Vacate Default Judgment Pursuant to Superior Court Rule 60(b) (the "Motion").[4]  In its Motion, PNC asks the Court to vacate default judgment on the ground of excusable neglect.[5]  With its Motion, PNC filed a declaration made by Ariel N. Forbes ("Forbes"), Senior Counsel in PNC's Legal Department, describing the circumstances surrounding PNC's failure to respond to the Complaint.[6]  Forbes explained that after the Complaint had been served in Delaware, it was forwarded to PNC's main office in Pittsburgh, Pennsylvania.[7]  Upon its arrival in Pittsburgh, the Complaint—like all legal mail—was supposed to be processed by PNC's Legal Department Operations Team (the "Operations Team").[8]  But due to COVID-19, the Operations Team had been working under modified protocols, which limited the number of members who

---

[2] Motion Pursuant to Rule 55(b)(2) for Entry of Default Judgment (Trans. ID. 66385842).

[3] Order Granting Plaintiff's Motion for Entry of Default Judgment (Trans. ID. 66443162).  As the Court noted in its Order, O'Rourke's Complaint was served on PNC in Delaware on September 30, 2020, so PNC's response was due by October 20, 2020.  *Id.* ¶¶ 2–3 (citations omitted).

[4] Motion to Vacate Default Judgment.

[5] *See id.* at ¶ 9 (quoting *Wynnwood Condo., Assoc. v. Cekine*, 2021 WL 287834, at *2 (Del. Super. Ct. Jan. 27, 2021)) ("*First*, the Court must look to whether the party's failure to appear was the result of 'neglect which might have been the act of a reasonable person under the circumstances.'").

[6] *See generally* Unsworn Declaration Pursuant to 10 *Del. C.* § 3927 in Support of Motion to Vacate Default Judgment Pursuant to Superior Court Rule 60(b) (Trans. ID. 66452921).

[7] *Id.* at ¶¶ 5–6.

[8] *Id.* at ¶¶ 6, 9.

could be on site at one time.[9] This limitation—and "an unknown event"—caused "the Complaint to be misplaced from other legal materials awaiting processing."[10] Forbes states that PNC first received notice of O'Rourke's suit on March 18, 2021, when Forbes received a copy of O'Rourke's Motion for Default Judgment.[11] Soon after, Forbes requested a copy of the Complaint from O'Rourke's counsel and then retained Delaware counsel.[12]

3.    On April 19, 2021, O'Rourke filed a response arguing that PNC's explanation failed to demonstrate excusable neglect.[13]

4.    On May 12, 2021, the Court held oral argument on PNC's Motion.[14] After hearing from both parties, the Court asked PNC to submit a supplemental declaration explaining the way that it processed legal mail before COVID-19 in contrast to its modified procedures. The Court also asked PNC for any additional details about what might have happened to the Complaint and what PNC did to locate the Complaint.

5.    On May 21, 2021, PNC submitted a supplemental declaration made by Forbes elaborating on PNC's procedures for processing legal mail—both before and

---

[9] *Id.*
[10] *Id.* at ¶ 11.
[11] *Id.* at ¶ 14.
[12] *Id.* at ¶¶ 15–16.
[13] *See generally* Plaintiff's Response to Defendant's Motion to Vacate Default Judgment (Trans. ID. 66526525).
[14] *See* Judicial Action Form for Motion to Vacate Judgment (Trans. ID. 66593601).

during COVID-19.[15]  Forbes explained that in the early stages of COVID-19, PNC divided its Pittsburgh employees into two groups, "Orange" and "Blue," to minimize the number of employees who were on site at one time.[16]  The Orange and Blue groups were each assigned a member of the Operations Team so that legal mail could be processed regardless of which group was on site on a particular day.[17]  For a while, the COVID-19 procedures operated smoothly; an in-house attorney could receive a piece of legal mail from Delaware within one or two days after it arrived in Pittsburgh.[18]  But that changed on September 28, 2020, when PNC instituted a reorganization of the Orange and Blue groups.[19]  Under the reorganization, the Orange group was inadvertently left without a member of the Operations Team to process legal mail.[20]  And then O'Rourke's Complaint arrived:

> According to delivery records, the mail package from the Delaware Offices containing the Complaint was received in the mailroom at the Pittsburgh Office on Thursday, October 1, 2020.  A mail clerk then placed the mail package on Mr. Fishman's desk and informed the Delaware Office that the package had been received.[21]

---

[15] Supplemental Unsworn Declaration Pursuant to 10 *Del. C.* § 3927 in Support of Motion to Vacate Default Judgment Pursuant to Superior Court Rule 60(b) ("Supplemental Declaration") (Trans. ID. 66623184).

[16] *Id.* at ¶¶ 6–7, 28–29.

[17] *Id.* at ¶ 32.

[18] *Id.* at ¶ 40.

[19] *Id.* at ¶¶ 45–46.

[20] *See id.* at ¶ 47.

[21] *Id.* at ¶ 49.  Mr. Fishman is a member of the Operations Team.  *Id.* at ¶ 7.

The Orange group was on site when the package containing the Complaint arrived, so there was no one to process it.[22] By the time that PNC resolved its reorganization issue—around October 8, 2020—494 pieces of unprocessed legal mail had accumulated.[23] "Absent from the 494 pieces of mail process was [O'Rourke's] Complaint."[24]

6.      On May 28, 2021, O'Rourke responded to PNC's supplemental declaration.[25] She argued that PNC had again failed to demonstrate excusable neglect.[26] In O'Rourke's view, PNC's "explanation is that the Complaint was 'absent' from the documents that were processed by its Operations team," which "does little to enlighten the Court as to what actually occurred."[27] O'Rourke further contends that "[i]f neglect is to be excused, PNC at the least should have investigated what happened and provided the Court with the results of that investigation."[28]

7.      Under Superior Court Civil Rule 60(b)(1), "[o]n motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . excusable neglect . . . ."[29] To be

---

[22] *Id.* at ¶ 50.
[23] *Id.* at ¶¶ 51–52.
[24] *Id.* at ¶ 53.
[25] Plaintiff's Response to Defendant's Supplemental Affidavit (Trans. ID. 66643388).
[26] *See generally id.*
[27] *Id.* at ¶ 5.
[28] *Id.* at ¶ 8.
[29] Super. Ct. Civ. R. 60(b)(1).

relieved of default judgment because of excusable neglect, a defendant must show the following:

(1) excusable neglect in the conduct that allowed the default judgment to be taken;

(2) a meritorious defense to the action that would allow a different outcome to the litigation if the matter was heard on its merits; and

(3) that substantial prejudice will not be suffered by the plaintiff if the motion is granted.[30]

"The defendant must first establish excusable neglect before the Superior Court will consider whether a meritorious defense or prejudice to the plaintiff exists."[31] "Excusable neglect is defined as 'neglect which might have been the act of a reasonable prudent person under the circumstances.'"[32] "A mere showing of negligence or carelessness without a valid reason may be deemed insufficient."[33]

8. Here, the Court finds that PNC has not met its burden of showing excusable neglect. PNC concedes that on October 1, 2020, it received a package containing the Complaint and that it placed that package on the desk of a member of the Operations Team. But PNC did not act on the Complaint until March 18, 2021—after O'Rourke had filed her Motion for Default Judgment. At issue, then, is whether

---

[30] *Christiana Mall, LLC v. Emory Hill and Co.*, 90 A.3d 1087, 1091 (Del. 2014) (brackets and internal quotation marks omitted) (quoting *Verizon Delaware, Inc. v. Baldwin Line Const. Co., Inc.*, 2004 WL 838610, at *1 (Del. Super. Ct. Apr. 13, 2004)).
[31] *Id.* (citations omitted).
[32] *Id.* (quoting *Watson v. Simmons*, 2009 WL 1231145, at *2 (Del. Super. Ct. Apr. 30, 2009)).
[33] *Dalton v. Pacific Rim Capital, Inc.*, 2020 WL 6158115, at *3 (Del. Super. Ct. Oct. 20, 2020) (internal quotation marks omitted) (quoting *Watson v. Simmons*, 2009 WL 1231145, at *2 (Del. Super. Apr. 30, 2009)).

6

PNC acted reasonably in the period of over five months in which it had possession of the Complaint but failed to respond to it.[34]

9. Weighing against a finding of reasonableness is PNC's failure to investigate what happened to the Complaint. After the reorganization issue was resolved, the Operations Team identified a backlog of 494 pieces of unprocessed legal mail. But the Complaint was absent from the backlog, so PNC had reason to know that it was missing. Yet PNC has not explained what it did to investigate where the Complaint might have gone. This failure to investigate is unreasonable, especially in light of PNC's sophistication.[35] Accordingly, the Court finds that PNC has not provided a sufficient factual basis to establish that its failure to respond to the Complaint constitutes excusable neglect under Rule 60(b)(1). "Because [PNC] cannot establish excusable neglect, the Court need not address the meritorious defense and substantial prejudice prongs . . . ."[36]

---

[34] PNC argues that it acted diligently after learning of the suit, immediately contacting O'Rourke's counsel and retaining Delaware counsel, who then promptly entered her appearance. Motion to Vacate Default Judgment, at ¶ 9. In PNC's view, this post-notice conduct "weigh[s] in favor of vacating the default judgment." *Id.* (citing *Shah v. Coupe*, 2014 WL 5712823, at *2 (Del. Super. Ct. Nov. 3, 2014)). In support of its view, PNC relies on this Court's decision in *Shah v. Coupe*. But in *Shah*, it was the State's "proffered explanation," not the State's post-notice conduct, that the Court found to "constitute[] excusable neglect." *Shah*, 2014 WL 5712823, at *2.

[35] *Cf. Christiana Mall, LLC*, 90 A.3d at 1091 (Del. 2014) ("Christiana is owned by Fortune 500 trust company, General Growth Property . . . , that has an office of general counsel and a legal department headed by Francone. An entity with this level of sophistication and resources should not have engaged in what it admitted was 'foolish behavior.'").

[36] *Dalton*, 2020 WL 6158115, at *5 (citing *Apartment Communities Corp. v. Martinelli*, 859 A.2d 67, 72 (Del. 2004)).

7

10. Even though PNC has not established excusable neglect, the Court may nonetheless vacate default judgment under Rule 60(b)(6) for "any other reason justifying relief from the operation of the judgment."[37] The Court did just that in *Dalton v. Pacific Rim Capital, Inc.*[38] The Court in that case found that the moving defendant did not demonstrate excusable neglect.[39] But the Court ultimately vacated default judgment under Rule 60(b)(6)—in part because the moving defendant "acted reasonably upon receiving notice" of the suit in which it was named a defendant.[40] And it did so in the midst of the COVID-19 pandemic, "an unprecedented time that included national and local states of emergencies."[41]

11. Here, there is no dispute that PNC acted diligently after learning of O'Rourke's suit. PNC immediately contacted O'Rourke's counsel to ask for a copy of the Complaint and then retained Delaware counsel to represent it in this case. Although PNC's post-notice conduct does not factor into the Court's Rule 60(b)(1) analysis, the Court finds—in line with *Dalton*—that it weighs in favor of vacating default judgment under Rule 60(b)(6). In addition, all of the procedural events in this case have occurred in the midst of COVID-19, as did many of the procedural

---

[37] Super. Ct. Civ. R. 60(b)(6).
[38] *Dalton*, 2020 WL 6158115, at *6 (granting the moving defendant's motion to vacate default judgment under Rule 60(b)(6) despite finding that the defendant failed to meet "its burden under Superior Court Rule 60(b)(1) to show [that] its failure to respond was the product of excusable neglect").
[39] *Id.* at *5.
[40] *Id.* at *6.
[41] *Id.*

8

events in *Dalton*. COVID-19 has wreaked havoc on businesses, requiring them to respond to ever-changing regulations and public-health guidance. The Court's Rule 60(b)(6) analysis takes this into account. Finally, the Supreme Court of Delaware has stated that "Courts should apply rules with 'liberal construction because of the underlying public policy that favors a trial on the merits, as distinguished from a judgment based on a default.'"[42] For these reasons, the Court exercises its discretion under Rule 60(b)(6) to vacate the default judgment against PNC.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant PNC Bank's Motion to Vacate Default Judgment Pursuant to Rule 60(b) is **GRANTED**.

**IT IS SO ORDERED.**

*Jan R. Jurden*

Jan R. Jurden, President Judge

cc: Prothonotary

---

[42] *Dishmon v. Fucci*, 32 A.3d 338, 346 (quoting *Beckett v. Beebe Medical Center*, 897 A.2d 753, 757–57 (Del. 2006)).