**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:     December 9, 2020
Date Submitted:    September 23, 2020

***Via File & ServeXpress***
Robert J. Valihura, Jr., Esquire
Morton Valihura & Zerbato, LLC
3704 Kennett Pike, Suite 200
Greenville, Delaware 19807

***Via U.S. Mail***
Sheryl Dickerson
18340 Southampton Drive
Lewes, Delaware 19958

Re:    *Sheryl Dickerson v. The Villages of Five Points Property Owners Association, Inc.*
      C.A. No. 2020-0420 PWG

Dear Counsel and Ms. Dickerson:

This case involves a complaint against a homeowner's association in a dispute over whether a homeowner violated the association's deed restrictions in making improvements to the association's common area, without the association's written approval. Pending before me are two motions. First, the homeowner filed a motion for default judgment on the grounds that the association failed to answer by the filing deadline. Second, the association moved to dismiss the complaint alleging that this Court lacks jurisdiction to hear the case under 10 *Del. C.* §348 since the homeowner sold the property, leaving only a claim for money damages. I recommend that the Court deny the motion for default judgment and the motion to dismiss. This is my final report.

## I.      Background

On May 14, 2013, Plaintiff Sheryl Dickerson ("Dickerson") purchased property in the Villages of Five Points, located at 16859 North Hunters Run, Lewes, Delaware ("Property").[1]  As a property owner, Dickerson was a member of the Defendant Villages of Five Points Property Owners Association, Inc. ("the Association"), subject to the Declaration of Covenants, Conditions, and Restrictions for the Villages of Five Points ("the Declaration").[2]  The Declaration requires that a homeowner obtain written permission from the Association before altering "in any way any common area."[3]  Dickerson alleges that, intermittently between 2013 and 2019, she engaged in various improvements on the common area ("Common Area") adjacent to the rear of her Property, at her own expense, mostly with the Association's verbal consent.   Those improvements ("Improvements") included removing dead trees, underbrush, weeds and invasive growth from the storm water management ditch adjacent to the Common Area, and planting trees and small plantings and shrubs in the Common Area.[4]  Dickerson

---

[1] Docket Item ("D.I.") 1, ¶ 4.

[2] *Id.,* ¶¶ 4, 9, Ex. A.

[3] *Id.*, Ex. A, §9.30.

[4] Dickerson makes the following allegations: In the Fall of 2013, Dickerson asked the Association to remove a large tree that was blocking a pathway at the rear of her property. *Id.*, ¶¶ 10-11.  The Association refused to remove the tree, but its agent gave Dickerson verbal permission to remove the tree at her own expense. *Id.,* ¶ 12. Dickerson paid for the tree to be removed. *Id.,* ¶ 13.  In November of 2013, Dickerson paid for

asserts that all improvements were "clearly visible and readily apparent from any inspection or visit to the affected common area."[5] She also asserts that the first time she received any notice that her actions violated the Declaration was verbal notice by an agent of the Association on September 17, 2019, which was followed by violation letters sent by the Association on November 12, 2019 and on March 27, 2020, and an email notification on May 11, 2020, demanding she remove the improvements or cover the costs of returning the Common Area to its original condition (and pay attorneys' fees).[6] Dickerson alleges that, after months of unsuccessful efforts trying to resolve the dispute, on May 29, 2020, she filed a complaint against the Association under 10 *Del. C.* §348.[7]

---

underbrush and invasive weeds to be removed from the Common Area. *Id.,* ¶ 14. In June of 2014, Dickerson continued the removal of the underbrush and invasive weeds, removed four dead trees, and reseeded the grass area in the Common Area. *Id.,* ¶¶ 17-18. Dickerson received the Association's verbal consent to continue the work at her own expense. *Id.,* ¶ 18. In July of 2015, Dickerson requested that the Association remove invasive growth from the storm water management ditch adjacent to the Common Area. *Id.,* ¶ 22. The Association refused her request, but gave her verbal permission to perform the work at her own expense. *Id.,* ¶¶ 23-24. In April of 2016, Dickerson had one tree installed at her expense in the Common Area. *Id.,* ¶ 28. In November of 2017, Dickerson was granted verbal approval from the Association to remove five dead trees from the Common Area at her expense and she had the trees removed. *Id.,* ¶¶ 31-33. In April of 2018, Dickerson had two trees installed at her expense in the Common Area. *Id.,* ¶ 36. In addition, from the Fall of 2013 until the date the Complaint was filed, Dickerson planted small plantings in the Common Area at her own expense. *Id.,* ¶ 39.

[5] *Id.,* ¶¶ 15, 20, 26, 29, 34, 37.

[6] *Id.,* ¶¶ 42-45, 49.

[7] *Id.,* ¶¶ 42-49; D.I. 19, at 2-3.

In her complaint, Dickerson brought three counts. Count I alleges that enforcement of the Common Area restrictions in the Declaration against her is barred by the equitable doctrine of laches.[8] Count II asserts the Association is estopped from enforcing, and from employing self-help to enforce, Declaration restrictions related to the Improvements.[9] Count III claims the Association will be unjustly enriched by enforcing the Declaration restrictions because the Improvements benefitted the Association.[10] Dickerson seeks (1) relief enjoining the Association from enforcing restrictive covenants, self-help, and any fines or fees related to the Improvements, (2) reimbursement for the cost of the Improvements to prevent unjust enrichment, and (3) attorneys' fees and costs.[11]

On June 24, 2020, mediation was ordered under 10 *Del. C.* §348.[12] Dickerson sold the Property on July 15, 2020, and filed a motion for default judgment on July 29, 2020.[13] On August 11, 2020, the Association moved to dismiss the complaint.[14] Dickerson filed her opposition to the motion to dismiss on August 17, 2020, and the Association submitted its answering brief to the

---

[8] D.I. 1, ¶¶ 6-50.

[9] *Id.,* ¶¶ 51-62.

[10] *Id.,* ¶¶ 63-77.

[11] *Id.*, at 20-22.

[12] D.I. 5. There is no evidence that mediation was ever held.

[13] D.I. 19, Aff., Ex. 8; D.I. 8.

[14] D.I. 10.

motion for default judgment and its reply to the motion to dismiss on September 8, 2020.[15]  Dickerson filed her reply response on September 23, 2020.[16]

## II.    Analysis

### A. Is default judgment appropriate in this case?

Dickerson argues that she is entitled to an entry of default judgment because the Association failed to file an answer by the filing deadline.[17]  The Association counters that an entry for default judgment became unavailable as soon as it filed an appearance, despite missing the deadline by several weeks.[18]  Both arguments fail for the reasons set forth below.

The entry of a default judgment under Court of Chancery Rule 55(b) is permissive, and the Court has discretion to decide whether to enter a default judgment based on the particular set of facts before it.[19]  It is an "extreme remedy," requiring the defendant's "willful or conscious disregard for the rules of the Court," or when the defendant "blatantly fails to appear or plead for a prolonged

---

[15] D.I. 13; D.I. 16.  The Association has not yet filed an answer.

[16] D.I. 19.

[17] *Id.*, at 10.

[18] D.I. 16, at 5-6.  Although the deadline to file an answer was July 14, 2020, the Association filed an appearance and motion to dismiss on August 11, 2020.  D.I. 10; D.I. 13.

[19] *Cf. New Castle Shopping, LLC v. Penn Mart Disc. Liquors, Ltd.*, 2009 WL 5197189, at *2 (Del. Ch. Oct. 27, 2009); *Greystone Digital Tech., Inc. v. Alvarez*, 2007 WL 2088859, at *2 (Del. Ch. July 20, 2007).

period of time."[20] Where "a defendant admits to failing to file a timely answer but does participate in the proceedings and where the plaintiff has not presented any prejudice from any delay," entry of a default judgment may not be warranted in the "early stages of litigation."[21]

Dickerson asserts that she is entitled to an automatic entry for default judgment because the Association failed to respond by the filing deadline. Under Rule 55(b), an entry for default judgment is discretionary, not mandatory, and public policy favors resolving a case on the merits. Here, it is undisputed that the parties engaged in negotiations after Dickerson filed her complaint.[22] The Association alleges it believed that the negotiations would be successful, and relied on that belief in failing to respond by the July 14, 2020 deadline.[23] It asserts that there was part performance of the parties' settlement agreement by Dickerson with her payment to the Association when she sold the Property on July 16, 2020, and it responded once it realized that Dickerson was continuing to pursue the action

---

[20] *Tabb v. Bank of New York Mellon*, 2017 WL 2570020, at *1 (Del. Ch. June 14, 2017) (citations omitted); *New Castle Shopping, LLC*, 2009 WL 5197189, at *2 (citations omitted).

[21] *Tabb v. Bank of New York Mellon*, 2017 WL 2570020, at *1 (Del. Ch. June 14, 2017); *see generally Apartment Communities Corp. v. Martinelli*, 859 A.2d 67, 69-70 (Del. 2004).

[22] The parties met at least twice in person on June 25, 2020 and July 7, 2020. D.I. 19, Aff., ¶¶ 4, 5. On July 8, 2020, the Association memorialized what it thought was "mutually agreeable terms [for] settlement." D.I. 16, at 1-2. They also engaged in further "settlement discussions" via email from July 10, 2020 to July 13, 2020. D.I. 17, Ex 1.

following the sale of the Property.[24] Dickerson contends that there was no agreement settling the dispute, and asserts negotiations terminated at an impasse on July 13, 2020 (one day before the filing deadline) and she paid the Association fees at closing only in order to complete the sale of the Property.[25]

The parties were in communication regarding settlement around the time of the filing deadline. There was not a prolonged delay in the Association's response: the filing deadline was July 14, 2020, Dickerson filed her motion for default judgment on July 29, 2020, and the Association entered its appearance, and filed its motion to dismiss, on August 11, 2020. Even if the Association's response had been timely, Dickerson sold the Property shortly thereafter, and no prejudice resulting from the Association's 28-day delay in responding to the complaint has been shown. And, there is no evidence that the Association acted with "willful or conscious disregard for the rules of the Court." Given the circumstances, I recommend that the Court deny Dickerson's motion for default judgment.

In contrast, the Association argues that an entry for default judgment is unavailable because it filed an appearance.[26] A late filing of appearance does not

---

[23] D.I. 16, at 6-7.

[24] *Id.*

[25] D.I. 19, at 13, 16-17.

[26] D.I. 16, at 5-6.

necessarily exempt a party from an entry of default judgment.[27]  The Association's

reliance on *Delaware Sand & Gravel Co. v. Bryson*[28] is misplaced.  *Delaware*

*Sand & Gravel* is distinguishable from the present case because, in that case, "the

defendant . . . entered a stipulation with the [plaintiff] extending the defendant's

time to answer the complaint."[29]  In this case, there was no request or agreement

for an extension.  I rely, instead, on the controlling case *Pinkett ex rel. Britt v.*

*Nationwide Mut. Ins. Co.,*[30] which held:

> There is no hard and fast rule that the filing of an entry of appearance
> or an untimely answer renders default judgment 'unavailable.'  Rule
> 55(b)(2) expressly contemplates that a judgment by default may be
> entered against a party who has entered an appearance by the
> requirement that written notice of the application for default judgment
> be given to the party or the party's representative.  An entry of
> appearance alone simply triggers the requirement that the party be
> given notice before a motion for default judgment is presented.  An
> answer or an appropriate motion must still be filed within 20 days

---

[27] *Pinkett ex rel. Britt v. Nationwide Mut. Ins. Co.,* 832 A.2d 747, 750 (Del. Super. 2003)
("The defendant's failure to file an answer or appropriate motion within the required time
is a failure to defend which exposes it to default judgment under Rule 55."); *see also*
*JPMorgan Chase Bank v. Smith*, 2014 WL 7466729, at \*2 (Del. Super. Dec. 15, 2014)
("a failure to defend is not cured by the filing of an untimely answer").

[28] 414 A.2d 207 (Del. 1980).

[29] *Delaware Sand & Gravel Co.,* 414 A.2d at 207.

[30] *Pinkett ex rel. Britt,* 832 A.2d at 750.  Although both *Delaware Sand & Gravel Co. v.*
*Bryson and Pinkett ex rel. Britt v. Nationwide Mut. Ins. Co.* interpret Superior Court Rule
55(b) rather than Court of Chancery Rule 55(b), both Courts' Rules 55 address the entry
of judgment when a party "has failed to appear, plead or otherwise defend," and provide
for service of the motion for default judgment on a defendant who has appeared in an
action prior to the hearing on the motion. *See* Ct. Ch. R. 55; Ct. Super. R. 55.

after being served with process or entering an appearance, whichever first occurs.[31]

Most crucially, "the filing of an untimely answer after a motion for default judgment is filed does not cure a default."[32]  Here, although default judgment is available, I recommend it not be entered for the reasons set forth in this report.

### B.  Does the Court of Chancery lack jurisdiction to hear this case?

The Association argues that this case should be dismissed because the Court was divested of jurisdiction under 10 *Del. C.* §348 when Dickerson sold the property on July 15, 2020.[33]  Section 348 mandates that "[a]t least 1 party [must be] a homeowner or lot owner" in the community with the deed restrictions for that section to apply.[34]  Since Dickerson sold the Property, the Association reasons that the Court's jurisdiction under Section 348 was eliminated.[35]

In a motion to dismiss for lack of subject matter jurisdiction, "the burden is on the plaintiff to prove jurisdiction exists."[36]  The Court of Chancery is a court of limited jurisdiction and acquires "subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is

---

[31] *Pinkett ex rel. Britt,* 832 A.2d at 750.

[32] *Id.*

[33] D.I. 10, ¶¶ 9-10.

[34] 10 *Del. C.* §348(a)(3).

[35] D.I. 10, ¶¶ 9-10.

[36] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.,* 937 A.2d 1275 (Del. 2007).

equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[37]

When Dickerson filed her complaint on May 29, 2020, she was the owner of the Property, so this Court had jurisdiction to hear the case under 10 *Del. C.* §348.[38] Section 348 limits its applicability to actions involving homeowners in the community.[39] Accordingly, the Court's jurisdiction over the case under Section 348 lapsed when Dickerson sold the property. At that point, Section 348's provisions for mandatory mediation and expedited resolution of the dispute were no longer applicable. In the absence of statutory jurisdiction, the Court retains jurisdiction over the matter only if the claim, or the relief requested, is equitable. In other words, the Court has subject matter jurisdiction where a case involves a "request for an equitable remedy when there is no adequate remedy at law."[40] The Court performs "a realistic assessment of the nature of the wrong alleged and the

---

[37] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC,* 859 A.2d 989, 997 (Del. 2004); *Quarum v. Mitchell Int'l, Inc.,* 2019 WL 158153, at *2–3 (Del. Ch. Jan. 10, 2019) (citations omitted); *Testa v. Nixon Unif. Serv., Inc.*, 2008 WL 4958861, at *2 (Del. Ch. Nov. 21, 2008) (citations omitted).

[38] 10 *Del. C.* §348(a)(3).

[39] *Id.*

[40] *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017) (citation omitted); *see also Hughes Tool Co. v. Fawcett Publications, Inc.,* 315 A.2d 577, 579 (Del. 1974); *Glanding v. Indus. Tr. Co.,* 45 A.2d 553, 557 (Del. 1945); *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *4 (Del. Ch. July 31, 2019); *Heathergreen Commons Condo. Ass'n v. Paul,* 503 A. 2d 636, 642 (Del. Ch. 1985).

remedy available in order to determine whether a legal remedy is available and fully adequate."[41]

To determine whether this Court has jurisdiction over this matter, the remaining consideration is whether Dickerson has a full, adequate and complete remedy at law. If she does, then this Court does not have subject matter jurisdiction over this case. Dickerson brought three counts in her complaint, with Counts I and II seeking injunctive relief to bar the Association from enforcing, and from employing self-help to enforce, restrictions in the Declaration related to the Improvements made by Dickerson to the Common Area.[42] The Association argues that, "[w]ithout any property interest, [Dickerson] has no standing to contest, as she seeks to do in her Complaint, what landscaping stays or is removed on the Association's property."[43]

When she sold the Property, Dickerson transferred her property rights, under the Declaration, to the Property's new owner.[44] In order to obtain permanent

---

[41] *Candlewood Timber Grp., LLC,* 859 A.2d at 997 (citation omitted); *Prestancia Mgmt. Grp., Inc. v. Virginia Heritage Found., II LLC*, 2005 WL 1364616, at *3 (Del. Ch. May 27, 2005) ("In determining whether equitable jurisdiction exists, this Court will look beyond the language of a complaint and examine the substance and nature of the relief being sought.").

[42] *Id.,* ¶¶ 6-62.

[43] D.I. 16, at 13.

[44] *Urdan v. WR Capital Partners, LLC*, 2019 WL 3891720, at *12 (Del. Ch. Aug. 19, 2019) ("The owner of real property . . . holds a bundle of rights derived from ownership, but transfers those rights and the ability to enforce them when the property is sold.").

injunctive relief, a party must show: "(1) actual success on the merits, (2) irreparable harm, and (3) the harm resulting from a failure to issue an injunction outweighs the harm to the opposing party if the court issues the injunction."[45] Having relinquished her property rights, Dickerson cannot show that the Association's enforcement of, or use of self-help to enforce, Declaration restrictions will cause her irreparable harm, or that the equities balance in her favor, because the Association's actions related to the Improvements no longer affect her. She has no basis for the equitable remedy of injunctive relief.[46]

Dickerson's remaining claim, Count III, seeks reimbursement for the cost of the Improvements to prevent unjust enrichment to the Association.[47] The Association argues that this count seeks only money damages and does not confer

---

[45] *Copi of Delaware, Inc. v. Kelly*, 1996 WL 633302, at *4 (Del. Ch. Oct. 25, 1996), *aff'd sub nom. Smart Bus. Sys., Inc. v. Copi of Delaware, Inc.*, 707 A.2d 767 (Del. 1998); *see also BE & K Eng'g Co., LLC v. RockTenn CP, LLC*, 2014 WL 186835, at *23 (Del. Ch. Jan. 15, 2014), *aff'd*, 103 A.3d 512 (Del. 2014).

[46] However, what remains of Counts I and II is Dickerson's claim for the $4,356.00 in Association fees charged against her for the alleged violations associated with the Improvements, which she paid when she sold the Property. *See* D.I. 19, Aff., Ex. 8. Since, as discussed below, this Court has jurisdiction over Dickerson's unjust enrichment claim, it retains discretion, under the clean up doctrine, to resolve an ancillary legal question (involving the same controversy) like this one. *See, e.g., In re Morrow Park Holding LLC*, 2018 WL 2123280, at *2 (Del. Ch. Mar. 28, 2018); *Kraft v. WisdomTree Investments, Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016); *De Adler v. Upper New York Inv. Co. LLC*, 2013 WL 5874645, at *9 (Del. Ch. Oct. 31, 2013).

[47] D.I. 1, at 21.

subject matter jurisdiction on the Court.[48]  Unjust enrichment is defined as "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience."[49]  The Court of Chancery has the "power to adjudicate claims of unjust enrichment that require restitution when one person is unjustly enriched at the expense of another."[50]  An unjustly enriched defendant is required to disgorge any unjustly received benefit.  However, "[d]epending on the circumstances, unjust enrichment can be thought of as either a legal or an equitable claim."[51]  The Court looks beyond the remedies being sought to focus on the allegations in the complaint to determine what the plaintiff really seeks to gain.[52]  For example, if the unjust enrichment serves "as an alternate theory of recovery for a contract claim," and money damages will make the plaintiff whole, it is a legal claim.[53]

---

[48] D.I. 16, at 11.

[49] *Pepsi-Cola Bot. Co. of Salisbury, Md. v. Handy*, 2000 WL 364199, at *6 (Del. Ch. Mar. 15, 2000) (citing *Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 (Del. 1988)).

[50] *Id.*

[51] *B.A.S.S. Grp., LLC v. Coastal Supply Co.,* 2009 WL 1743730, at *6, n. 61 (Del. Ch. June 19, 2009).

[52] *JCM Innovation Corp. v. FL Acquisition Holdings, Inc.*, 2016 WL 5793192, at *4 (Del. Super. Sept. 30, 2016).

[53] *B.A.S.S. Grp., LLC,* 2009 WL 1743730, at *6, n. 61; *see also Crosse v. BCBSD, Inc.,* 836 A.2d 492, 496-97 (Del. 2003) ("off-the-contract theories of recovery are legal, not equitable claims"); *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *4 (Del. Ch. July 7, 2017).

Here, Dickerson's allegation of unjust enrichment is equitable – she seeks disgorgement for the benefit she asserts the Association unjustly received from her actions. Even though she seeks compensation, or monetary damages, for that benefit, her claim retains its equitable character (it is not an alternative to a contract claim), and I find that she does not have an adequate remedy at law. It remains to be seen if Dickerson can prove her unjust enrichment claim, but that claim provides a sufficient basis to invoke this Court's jurisdiction. Accordingly, I recommend the Court deny the Association's motion to dismiss.

## III. Conclusion

Based upon the reasons set forth above, I recommend denial of Dickerson's motion for default judgment. I also recommend that the Court deny the Association's motion to dismiss. This is a final report and exceptions may be taken under Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery